855 P.2d 133

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Hope R. ARRINGTON, Defendant–
Appellee.**

**No. 13920.**

Court of Appeals of New Mexico.

April 16, 1993.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Sammy J. Quintana, Chief Public Defender, David Henderson, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

PICKARD, Judge.

The central issue presented in this case is whether the trial court, in sentencing a habitual offender, may determine that a mandatory prison term is constitutionally impermissible under the Eighth Amendment of the United States Constitution, and Article II, Section 13 of the New Mexico Constitution. We hold that in extremely limited circumstances, a trial court may do so. Because the trial court in the present case could properly make such a determination on the facts presented to it, we affirm.

## FACTS

Defendant was originally charged with unlawfully distributing marijuana, a controlled substance, in violation of NMSA 1978, Section 30–31–22 (Repl.Pamp.1989). Defendant pleaded guilty to the charge. The trial court sentenced Defendant to eighteen months' imprisonment, which was suspended except for time served. The State filed a supplemental information, alleging that Defendant had committed the crime of possession of marijuana in Texas in 1991. In a bench trial, Defendant was found to be the same person who committed the earlier offense.

Defendant testified at the habitual-sentencing hearing that she has severe bronchial asthma. She further testified that while she was first in the Lea County Jail on the distribution of marijuana charge, the jail physician lowered the dosage on one of her medications and eliminated another medication. Defendant testified that the physician told her that he had never seen anyone on so much medication and that he thought she did not need it. Defendant was in jail on the charge for twenty-one days. During that time, she saw the jail physician five times, once at his office and the other four times at the jail. In addition to other medications, Defendant was prescribed an inhaler for her asthma and medication for stomach ulcers. Defendant testified that while she was in the Lea County Jail, she was unable to obtain her inhaler when she needed it, such as during the night, because the jail did not have a nurse available twenty-four hours a day. After Defendant bonded out of jail, she was hospitalized for ten days because of her asthma.

Scott Ferris, Defendant's probation officer, testified at the sentencing hearing on Defendant's behalf. Ferris testified that he is a licensed practical nurse and that his wife is asthmatic. Ferris stated that when he visited Defendant for the first time while she was in the Lea County Jail, she was doing satisfactorily. After the jail physician reduced Defendant's medication, Ferris saw Defendant a second time while she was in custody. Ferris testified that he was concerned about Defendant's condition during this second visit because she was breathing with difficulty and was incoherent.

Ferris testified that Defendant would not get adequate medical care for her asthma at the Grants Correctional Facility. He stated that the facility, like the county jail, would not have twenty-four hour medical staff available and that the prison also would not allow Defendant to keep her medication with her. Ferris testified that the physician at the Grants facility was not an asthma expert and that incarceration at the Grants facility could jeopardize Defendant's life. Ferris stated on cross-examination that it would be standard practice for the Grants physician to contact a specialist if necessary and that he knew of nothing to prevent the Grants physician from taking such action. The trial judge stated that he believed that Ferris was qualified to give an opinion concerning Defendant's sentence because of Ferris's experience and training, and he asked Ferris to make such a recommendation. Ferris recommended that Defendant be sentenced to the custody of her family, located out of state. During the course of the hearing, the trial judge acknowledged that he considered himself a "semi-expert" on asthma, and he said that he had experienced an asthma attack that almost killed him.

Although the State argued that the trial court was required to commit Defendant to the Department of Corrections because the habitual-offender statute requires mandatory sentencing, the State presented no factual evidence at the hearing to rebut any of Defendant's claims. Nor does the State argue on appeal that this case should be remanded to give it an opportunity to factually rebut any of Defendant's evidence. Defense counsel argued that the trial court had the discretion to sentence Defendant to some sort of punishment other than incarceration, such as house arrest or the Delancey Street program. The trial court determined that Defendant's medical needs could not be met in prison, that any prison sentence would be life threatening to her, and that a one-year prison sentence would be cruel and unusual punishment in violation of Defendant's constitutional rights. The trial court also determined that it had discretion under the circumstances to specify where Defendant should serve her sentence and ordered her to serve the one-year unsuspended portion of her sentence in the custody of her parents.

## ANALYSIS

The State argues on appeal that the trial court was required to impose a one-year sentence pursuant to NMSA 1978, Section 31–18–17(B) (Repl.Pamp.1990), and that the trial court had no discretion to determine where Defendant could serve

her sentence. We agree with the State that the one-year sentence for habitual offenders is indeed mandatory under Section 31–18–17(B), and that the sentence may not be suspended or deferred. *See State v. Davis*, 104 N.M. 229, 719 P.2d 807 (1986). We also agree with the State that in the absence of special circumstances such as a constitutional violation, the trial court does not have discretion to specify the place habitual-offender defendants are to serve their sentences.

■ Under Section 31–18–17(B), (C), and (D), the basic sentence of habitual offenders is to be increased by one, four, or eight years. The basic sentence is a sentence of imprisonment, NMSA 1978, § 31–18–15(A) (Repl.Pamp.1990), unless the trial court defers or suspends the sentence, NMSA1978, § 31–20–3 (Repl.Pamp.1990). The increase in sentence mandated by the habitual-offender statute may not be suspended or deferred. Section 31–18–17(B), (C), and (D). Thus, persons sentenced under the habitual-offender statute ordinarily must be imprisoned in a corrections facility designated by the corrections department. NMSA 1978, § 31–20–2(A) (Repl.Pamp.1990). No argument is made that the trial court's sentence of Defendant to the custody of her parents is a permissible incarceration pursuant to NMSA 1978, Section 31–20–2(A) and (D) (Repl.Pamp.1990), allowing local incarceration for sentences between one year and eighteen months if there is a joint-powers agreement between the governing authority in charge of the place of incarceration and the corrections department.

■ However, we disagree with the State's assertion that the trial court must, in all instances, impose a prison term. While we acknowledge that it is a legislature's prerogative to dictate criminal penalties, a mandatory sentence is still subject to constitutional scrutiny. *See State v. Patterson*, 572 So.2d 1144, 1151 (La.Ct.App. 1990) (mandatory sentences fall within legislature's prerogative to determine length of sentence imposed, but constitutional proscription against cruel and unusual punishment overrides legislatively imposed mandatory minimum sentence if, as applied to a given defendant for a given crime, the punishment is constitutionally excessive), *cert. denied*, 577 So.2d 11–12 (1991). Thus, it is possible for a trial court to determine at sentencing that a prison term would violate the prohibition against cruel and unusual punishment as applied to a particular defendant.

In *State v. Augustus*, 97 N.M. 100, 637 P.2d 50 (Ct.App.), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981), we stated that in exceedingly rare cases, a term of incarceration may be found to be inherently cruel. *See also State v. Archibeque*, 95 N.M. 411, 622 P.2d 1031 (1981). In arguing that his case came within the "exceedingly rare" exception, the defendant in *Augustus* contended that given his medical condition and the particular circumstances of his case, it would be cruel and unusual punishment to incarcerate him. He relied on *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), for the proposition that "failure to provide needed medical care may constitute punishment that is inherently cruel." *Augustus*, 97 N.M. at 101, 637 P.2d at 51. We stated that under *Estelle*, a defendant may establish an Eighth Amendment violation through showing a "deliberate indifference" to his or her serious medical needs. *Id.; see Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *LaFaut v. Smith*, 834 F.2d 389 (4th Cir.1987) (Powell, Assoc. J. (retired)); *Naked City, Inc. v. State*, 460 N.E.2d 151 (Ind.Ct.App.1984). We determined that the defendant in *Augustus* had not shown that the trial court's sentence exhibited deliberate indifference to the defendant's medical needs. *Id.*

■ To the contrary here, we conclude that, on the unusual facts of the present case, the trial court could find that a sentence of incarceration would constitute a deliberate indifference to Defendant's serious medical needs. The evidence was uncontroverted that incarceration would be life-threatening to Defendant and that adequate medical care would not be available to her in a correctional facility. The State presented no evidence to controvert any of

**562**

these facts. Insofar as the State argues that the trial court's decision is not supported by substantial evidence, we reject that argument. The State argues that the testimony of Defendant's probation officer, Mr. Ferris, was the only evidence presented concerning the quality of care Defendant would receive in prison. Based on that evidence, the State suggests the trial court impermissibly speculated and guessed as to the type of medical care Defendant would actually receive while incarcerated.

Ferris testified that he was not confident of the ability of the women's prison in Grants to handle a severe asthma case. He also testified that there was not twenty-four hour coverage in the medical unit and that he believed the prison officials would probably try to keep Defendant from possessing a supply of her necessary medication for fear that other prisoners would steal it. In addition, Ferris testified that the prison would resist allowing Defendant to have immediate access to her medication.

We believe that the foregoing testimony is sufficient evidence to support the trial court's findings. Ferris's status as a probation and parole officer gave him insight into prison operations that an ordinary medical expert would not have. In addition, his experience as a practical nurse and his marriage to an asthma sufferer gave him unique insight into Defendant's medical needs. Thus, we believe that the trial court could have reasonably believed Ferris when he testified that the prison would not or could not provide Defendant with necessary medical care. See State v. Sparks, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985) (substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion).

The State asserts that Ferris could not be certain about the prison's willingness to allow Defendant ready access to necessary medication. In addition, the State argues that Ferris never cited to any prison rules or regulations that prevent such an arrangement. Nevertheless, we believe that those are matters of weight and credibility

left to the fact-finder's judgment. See State v. Vialpando, 93 N.M. 289, 292, 599 P.2d 1086, 1089 (Ct.App.1979) (it is for the trier of fact to determine the weight and sufficiency of evidence, including all reasonable inferences). Contrary to the State's suggestion, we do not believe that the evidence left the trial court in the position of needing to speculate or guess. To be sure, stronger evidence would have made a stronger case. However, the State was free to rebut Ferris's testimony, but apparently would not or could not. In any event, based on the evidence presented to the trial court, we affirm its decision holding that mandatory incarceration in this case would be life-threatening to this Defendant because her serious medical needs would not be handled adequately under customary prison practices and because there was no showing that the prison would make special provisions for Defendant. Such a failure to make provisions, in light of Defendant's experience in the county jail, would amount to deliberate indifference to her medical condition. Accordingly, the trial court did not err in ruling that mandatory incarceration would constitute cruel and unusual punishment. See State v. Augustus.

The judgment and sentence is affirmed. IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.