897 P.2d 241

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Hope R. ARRINGTON, Defendant–Appellant.**

**No. 15345.**

Court of Appeals of New Mexico.

May 5, 1995.

Certiorari Denied June 15, 1995.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Scot D. Key, Gary C. Mitchell, P.C., Ruidoso, for defendant-appellant.

**OPINION**

HARTZ, Judge.

This is our second occasion to address the constitutionality of incarcerating Defendant in New Mexico's penitentiary for women. In *State v. Arrington,* 115 N.M. 559, 855 P.2d 133 (Ct.App.1993), we affirmed the decision of the district court that it could not impose upon Defendant the prison term mandated by the state habitual-offender statute because incarcerating someone with significant asthma problems in the Grants Correctional Facility would constitute cruel and unusual punishment barred by the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution. On May 14, 1992, three days after the district court's ruling that she should not be incarcerated in the Grants facility, Defendant was arrested for distribution of marijuana. She pleaded no contest to the charge on February 26, 1993. At the sentencing hearing on July 13, 1993, three months after our opinion in *Arrington,* the district court heard testimony on Defendant's claim that incarceration in the Grants facility would constitute cruel and unusual punishment because of her severe asthma. The court rejected Defendant's claim and sentenced her as an habitual offender to impris-

onment for five and one-half years. She appeals. We affirm.

In *Arrington* we held that there was sufficient evidence to support the district court's ruling that the Grants facility "would not or could not provide Defendant with necessary medical care." *Id.* at 562, 855 P.2d at 136. We affirmed the district court's "decision holding that mandatory incarceration ... would be life-threatening to this Defendant because her serious medical needs would not be handled adequately under customary prison practices and because there was no showing that the prison would make special provisions for Defendant." *Id.* We concluded:

> Such a failure to make provisions, in light of Defendant's experience in the county jail [where she apparently had received such inadequate care for her asthma that she was hospitalized for ten days after her release], would amount to deliberate indifference to her medical condition. Accordingly, the trial court did not err in ruling that mandatory incarceration would constitute cruel and unusual punishment.

*Id.*

In the case now before us, however, the district court heard different evidence and reached a different conclusion. If this conclusion is supported by the record, we must affirm. *See id.* (the task of weighing the evidence is for the trier of fact, whose findings of fact will be affirmed if they are supported by substantial evidence).

As in the proceeding reviewed in *Arrington*, Scott Ferris, a licensed practical nurse and Defendant's probation officer, testified that in his opinion the Grants facility could not properly handle an inmate who suffered from severe asthma and that incarceration could be life threatening if medical care and medication were not immediately available when Defendant suffered an asthmatic attack. He noted the high altitude of Grants (6720 feet), maintained that the prison dispensary was not equipped to treat a severe asthma attack, and expressed concern that the doctor generally available to the prison was not a specialist.

Nevertheless, during his testimony Ferris also acknowledged the following facts that support the district court's ruling: A contract physician was available twenty hours per week to provide medical treatment to the inmates and the physician could arrive at the prison within ten minutes of an emergency call. If the contract physician was not available, five other physicians in the area could be called. The facility employed two registered nurses and three licensed nurses who rotated their shifts so that at least one nurse was always on duty. The facility could accommodate an inmate who needed to have medication available at all times—the inmate would be placed in a medium security, lockdown cell so that she could retain possession of her medication. The Grants hospital was only four and one-half miles from the prison, and an ambulance was stationed one-half mile from the hospital.

This testimony was more than sufficient for the district court to conclude that custodial treatment in the Grants facility, including arrangements for emergency medical care, would not amount to deliberate indifference to Defendant's asthmatic condition. The evidence stands in contrast to that presented in *Arrington*, 115 N.M. at 560, 562, 855 P.2d at 134, 136, where the state made no effort to rebut Ferris' testimony about the inadequacy of care. Indeed, the evidence in this case would support a determination that the medical care available to Defendant in prison would likely be superior to what she could otherwise obtain. Neither the New Mexico nor the United States Constitution requires that a medical specialist be available instantaneously to provide medical care to an inmate in Defendant's condition. Of course, if the care actually provided by the penitentiary turns out to be beneath constitutional standards, Defendant may seek relief in the future.

We affirm the judgment and sentence of the district court.

IT IS SO ORDERED.

DONNELLY and PICKARD, JJ., concur.