**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-048**

**Filing Date: March 20, 2017**

**Docket No. 34,814**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**ZACHERY E. LINDSEY,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Sergio J. Viscoli, Appellate Defender
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

**{1}** Defendant Zachery Lindsey was convicted of two fourth-degree felonies—shoplifting and conspiracy to commit shoplifting—and sentenced as a habitual offender under NMSA 1978, Section 31-18-17(A) (2003), based on his prior conviction for residential burglary. The district court imposed a five-year sentence of imprisonment, which included two mandatory one-year habitual offender enhancements. The court then suspended

1

the sentence in its entirety, finding substantial and compelling reasons to do so, and placed Defendant on probation.

**{2}** The State's appeal requires that we address a statute that has yet to be exactingly scrutinized by our appellate courts. To do so, and to ascertain whether the district court erred in suspending the portion of Defendant's sentence earned by virtue of his status as a habitual offender, we must interpret the phrase "substantial and compelling reasons" as contained in Section 31-18-17(A). We affirm Defendant's sentence.

**BACKGROUND**

**{3}** In October 2013 Defendant pled no contest to residential burglary, a third-degree felony, and larceny, a fourth-degree felony, offenses committed in November 2012 when Defendant was nineteen years old. For those offenses, Defendant received a conditional discharge, contingent upon his successful completion of five years' probation and repayment of up to $1,417 in restitution.

**{4}** In November 2014 while still on probation, Defendant was apprehended as he ran from a Wal-Mart store in Alamogordo, New Mexico. He was indicted for (1) shoplifting (over $500) and (2) conspiracy to commit shoplifting (over $500), both of which are fourth-degree felonies. Defendant again pled no contest to the charges.

**{5}** At sentencing, the prosecutor stated that he was "at a loss as to what to do" regarding Defendant, acknowledging Defendant's youth but also stating that Defendant "has done poorly on probation" and "is a young person that appears to be on the road to not a good position in life." The prosecutor suggested that the court "send [Defendant] to [a] diagnostic [center], perhaps as a stop-gap measure, an in-between measure." Defense counsel asked that Defendant's sentence be suspended for "compelling reasons," including Defendant's youth and that Defendant was by then performing well on probation, paying restitution for his prior offense, gainfully employed, and expecting a child. Undecided, the district judge continued the sentencing proceedings in order to hear from Defendant's probation officer, Wolf Fielenbach.

**{6}** At the follow-up hearing, the State reiterated its request for a sixty-day diagnostic commitment. Defense counsel continued to argue for a suspended sentence. Mr. Fielenbach testified that Defendant had done "very well on probation until" he re-offended, but that after spending a couple of weeks in prison Defendant's probation was reinstated, "mainly for the reason that he can pay off his restitution." Mr. Fielenbach explained that Defendant had been "on and off of jobs," making restitution payments difficult, but that Defendant was employed and "doing well" since being back on probation. He also elevated Defendant's probationary status to "high risk," meaning that he checked on Defendant once or twice a month and that he usually found Defendant "working in his dad's shop in the evenings." Mr. Fielenbach concluded: "I think he's on the right track." Defendant's father and wife also testified on Defendant's behalf, describing Defendant's demonstrated commitment to his new

employment and family and requesting an outcome that would allow Defendant to "continue on the path that he's on."

**{7}** In final remarks, the prosecutor argued that Section 31-18-17(A) does not permit a mandatory habitual offender sentence to be suspended "merely" because (1) Defendant resumed restitution payments, (2) Defendant was a married father-to-be, and (3) Defendant was employed. He argued that those attributes are "not defined" as substantial and could not justify imposition of a suspended sentence "in the interest of justice." The prosecutor added that "restitution was the order of another court" and therefore "not something that we can consider now because it's not substantial and compelling." He stated that he was "not necessarily disagreeing with any of it. It's just not substantial and compelling."

**{8}** The district court—in accordance with NMSA 1978, Section 31-18-15(A)(13) (2007) and Section 31-18-17(A)—sentenced Defendant to eighteen months for each of the counts on which he was found guilty, adding the one-year enhancements for each of the counts because of his habitual offender status. But the district court found that justice would not be served by Defendant's imprisonment, observing that Defendant had already served fifty-three days of pre-sentence confinement. Therefore, the district court suspended Defendant's entire sentence—including the habitual offender time—and instead placed him on probation "based on the fact that [Defendant is] doing well" and "complying with [the] terms and conditions of probation." Acknowledging the State's argument that Defendant was already required to comply with the terms and conditions of his probation for past violations, the district court nonetheless ruled that "justice is better served by getting [Defendant] on probation and having [Defendant] do what [he's] supposed to do as a requirement of [his] probation" in both the present and past cases. In addition to imposing terms of probation such as random urinalysis, drug and alcohol screening, and prohibiting alcohol consumption, the district court ordered that Defendant attend a "circle of security class" at Children in Need of Services (CHINS), which the court described as "not just a parenting class" but a "wonderful program," a "life-skills course" that could "really benefit [Defendant]." In its written judgment, the district court stated that "[j]ustice will not be served by [requiring that Defendant serve] the [h]abitual [o]ffender enhancement[s] for the prior nonviolent felony conviction. Defendant is capable of supervision at this time and is doing well on probation in CR-2013-15 as reported by his probation officer, Wolf Fielenbac[h]."

**{9}** From this judgment, the State appealed.

## DISCUSSION

**{10}** Our inquiry is two-fold. First, what does the term "substantial and compelling reasons" mean as contained in Section 31-18-17(A)? Second, did the district court abuse its discretion in this instance by suspending the entirety of Defendant's sentence, including the two one-year habitual offender enhancements under that statute?

## STATUTORY INTERPRETATION

3

**{11}**     Section 31-18-17(A) provides that:

> A person convicted of a noncapital felony . . . who has incurred one prior felony conviction . . . or conditional discharge . . . is a habitual offender and his basic sentence shall be increased by one year. The sentence imposed pursuant to this subsection shall not be suspended or deferred, unless the court makes a specific finding that the prior felony conviction and the instant felony conviction are both for nonviolent felony offenses and that justice will not be served by imposing a mandatory sentence of imprisonment and that there are *substantial and compelling reasons*, stated on the record, for departing from the sentence imposed pursuant to this subsection.

(Emphasis added.) Regarding whether "substantial and compelling reasons, stated on the record" support the district court's suspension of Defendant's sentence, and particularly the one-year mandatory sentencing enhancements for his being a habitual offender, the State urges us to adopt a restrictive definition of "substantial and compelling" employed in the state of Michigan. *See People v. Babcock*, 666 N.W.2d 231, 237 (Mich. 2003) (defining "substantial and compelling" as "an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases" (internal quotation marks and citation omitted)). The State thus maintains that the reasons stated by the district court are deficient, and that employing such a definition would clarify the district court's failure. Defendant, on the other hand, contends that statutory construction is unnecessary and makes no argument with respect to how we should interpret the term "substantial and compelling." Instead, Defendant argues simply that barring an abuse of the district court's discretion, we should affirm. We address this issue in the next section but agree with the State that construction of the phrase "substantial and compelling" is warranted. We nonetheless decline to adopt the State's proffered definition, concluding it to be inconsistent with our Legislature's intent.

**{12}**     "Statutory interpretation is an issue of law, which we review de novo." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "The primary goal in interpreting a statute is to give effect to the Legislature's intent." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. "We begin the search for legislative intent by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language." *Id.* (internal quotation marks and citation omitted). "When a term is not defined in a statute, we must construe it, giving those words their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Tsosie*, 2011-NMCA-115, ¶ 19, 150 N.M. 754, 266 P.3d 34 (internal quotation marks and citation omitted). "The application of the plain meaning rule does not, however, end with a formalistic and mechanistic interpretation of statutory language." *Davis*, 2003-NMSC-022, ¶ 6. "The legislative history of the statute, including historical amendments, and whether it is part of a more comprehensive act, is instructive when searching for the spirit and reason the Legislature utilized in enacting the statute[.]" *Id.* (citation omitted); *see also State v. Gutierrez*, 2007-NMSC-033, ¶ 31, 142 N.M. 1, 162 P.3d 156 (explaining that courts may

also be guided by a statute's legislative purpose when construing the statute).

**{13}** We begin by noting that the Legislature opted to use two words—"substantial" and "compelling"—and used these coordinate adjectives in the conjunctive, thus "indicating the Legislature recognized a difference between the two terms." *Gutierrez*, 2007-NMSC-033, ¶ 30. We must therefore construe each term so as not to render the other mere surplusage. *See Am. Fed'n of State, Cty. & Mun. Emps. (AFSCME) v. City of Albuquerque,* 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous[.]" (internal quotation marks and citation omitted)).

**The Term "Substantial"**

**{14}** As a starting point for interpreting undefined terms contained in a statute, "[o]ur courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." *State v. Chavez*, 2016-NMCA-016, ¶ 8, 365 P.3d 61, *cert. granted*, 2016-NMCERT-001, 370 P.3d 474. The term "substantial" has many definitions, most of which tend to fall into one of two categories: qualitative or quantitative. Qualitative definitions focus on the existential characteristic of the thing being described, i.e., whether it is real or not. *See Black's Law Dictionary* 1656 (10th ed. 2014) (defining "substantial" as "[r]eal and not imaginary; having actual, not fictitious, existence" as illustrated by the phrase "a substantial case on the merits"); *The Random House Dictionary of the English Language* 1418 (unabridged ed. 1971) (defining "substantial" as "of real worth, value, or effect" as illustrated by the phrase "substantial reasons" and providing "immaterial" and "ethereal" as antonyms of "substantial"). By contrast, quantitative definitions of "substantial" are concerned with expressions of amounts and sizes of the things being described. *See Black's Law Dictionary* 1656 (defining "substantial" as "[c]onsiderable in amount or value; large in volume or number" as in "substantial support and care"); *Random House Dictionary* 1418 (defining "substantial" as "of ample or considerable amount, quantity, size, etc." as in "a substantial sum of money"). What all of these definitions—whether qualitative or quantitative—reveal is that "substantial" is an inherently subjective term, one that is innately inexact.

**{15}** Other jurisdictions agree. *See Utilicorp United, Inc. v. United States*, 21 Cl. Ct. 453, 466-67 (Cl. Ct. 1990) (explaining that because "substantial is a subjective term, . . . [a]sking this Court to draw a bright line between substantial and significant or between substantial and essential is an unrealistic and illogical request[,]" and observing that "[i]f the regulations had been intended to be interpreted as narrowly and restrictively as suggested . . . then it seems a definition of the word 'substantial' would have also been provided"); *City of Spokane Valley v. Dirks*, No. 33140-III, 2015 WL 6395654 at *4, 19-20, 190 Wash. App. 1041, ___ P.3d ___ (describing "substantial" as a "subjective term[,]" making a perfunctory reference to a dictionary definition of "substantial" as meaning "being largely but not wholly that which is specified[,]" and rejecting a constitutional vagueness challenge to a city zoning ordinance's adult establishment regulations that defined "adult arcade establishment" as meaning a commercial premises where showing adult movies is a "substantial part of the

premises activity" (internal quotation marks and citation omitted)). While the State points to the Michigan case and its use of expressions such as "keenly or irresistibly grab our attention[,]" "considerable worth[,]" and "exists only in exceptional cases[,]" we conclude that our law is less amenable to restrictive interpretation.[1] *Babcock*, 666 N.W.2d at 237 (internal quotation marks and citation omitted).

{16}    New Mexico courts have only defined the term "substantial" in one case based on a definition contained in our Rules of Professional Conduct. *See Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶ 20, 292 P.3d 466. In that case, our Supreme Court explained that within the context of Rule 16-110(C) NMRA—which contains an exception that allows a law firm to represent a person in a matter where a newly associated lawyer is disqualified from representation so long as that lawyer did not have a "*substantial role*" in the matter—"[s]ubstantial means to a degree or extent that denotes a material matter of clear and weighty importance." *Mercer, LLC*, 2013-NMSC-002, ¶ 20 (alterations, internal quotation marks, and citation omitted). We conclude that the Legislature's expression of the degree to which reasons must exist to forego imposition of an otherwise mandatory sentence—by use of the term "substantial"—is consistent with the definition from *Mercer*. For us to require something of greater specificity would concoct exactitude for a term that inherently lacks it. It is not our role to improve upon or worsen (depending upon one's perspective) the legislative expressions that litigants disagree with or challenge. *See Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 (explaining that "[u]nless a statute violates the Constitution, we will not question the wisdom, policy, or justness of legislation enacted by our Legislature" (alteration, internal quotation marks, and citation omitted)). So here, we conclude only that a district court's justification for permitting a defendant to avoid—at least immediately—an otherwise mandatory sentence of imprisonment must be weighty, and not ethereal, in order to be "substantial." The fact that Defendant has attained stable employment, is paying restitution, is again complying with the terms of his probation, and has demonstrated the existence of a supportive family and his commitment to it collectively bears the capacity to signal on appeal that the district court was within its discretion to find that "substantial" reasons—i.e., material matters of clear and weighty importance—justified suspension of that portion of Defendant's sentence required by virtue of his habitual offender status. To reiterate, we see no reason to constrain the district court with an overly-specific

---

[1]Indeed, *Babcock* relied on the definition of "substantial and compelling" adopted by the Michigan Supreme Court in *People v. Fields*, 528 N.W.2d 176, 179 (Mich. 1995), noting that the term had "*acquired* a peculiar . . . meaning" in Michigan law. *Babcock*, 666 N.W.2d at 237 (emphasis added). In *Fields*, the Michigan Supreme Court reviewed the legislative history of Michigan's controlled substances sentencing statute, including an amendment in 1988 that included the addition of a section that "allowed a trial judge to deviate from minimum sentences set out in the statute if there were substantial and compelling reasons to do so." 528 N.W.2d at 178. The *Fields* Court explained that "[t]he words 'substantial and compelling' caused almost immediate conflict in the lower courts[,]" and therefore set forth to define the term in order to resolve the conflict. *Id.* No such conflict exists in our case law.

threshold showing in an instance where the Legislature chose a term that did not do so, and therefore decline to adopt the State's proffered definition. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ( noting that "[t]he court will not read into a statute . . . language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)),

**The Term "Compelling"**

{17} In addition to "substantial," the Legislature required that the district court's reasons also be "compelling," so we next address the proper construction of that term as well. As with defining "substantial," the challengingly subjective nature of the word "compelling" renders somewhat futile our effort to apply common dictionary definitions. That is because whichever such definition we might select would still require subjective, case-by-case, fact-specific analysis due to the subjective qualifiers in available definitions. *See Random House Dictionary* 300 (defining "compelling" as "requiring acute admiration, attention or respect"); *see also Fields*, 528 N.W.2d at 179 (relying on *Webster's New World Dictionary Third College Edition* to define "compelling" as "irresistibly or keenly interesting, attractive, etc.; captivating" (internal quotation marks omitted)). In our view, whether reasons are "compelling" depends upon the overall facts of a given case, including the particular criminal behavior the prosecution is designed to address, the history of a given defendant's efforts to comply with what is required of him or her in a law-abiding society, and the court's considerations of the factors in the defendant's life that lend themselves to a possibility of successful rehabilitation in a non-incarcerative environment. In other words, because there can be no formulaic expression of how a district court is to undertake such quintessentially factual determinations, appellate courts should steer well away from excessive supervision. *But cf. State v. Seigling*, No. 34,620, 2017 WL 361661, 2017-NMCA-035, ___ P.3d ___ (applying our Supreme Court's precedent to require district courts to consider imposition of lesser sanctions prior to more extreme measures when addressing state failures to comply with the district court's local case management rule).

{18} Our holding thus declines to excessively restrict by degree the primary decisional autonomy vested in district courts regarding the suspendability of mandatory sentences under Section 31-18-17(A). We are also informed by Section 31-18-17(A)'s legislative history, and particularly what we can infer from the Legislature's amendment of Section 31-18-17. Prior to 2002, a district court had no discretion to suspend or defer a habitual offender sentence under Section 31-18-17. *See State v. Arrington*, 1993-NMCA-055, ¶ 7, 115 N.M. 559, 855 P.2d 133 ("We agree with the [s]tate that the one-year sentence for habitual offenders is indeed mandatory . . . and that the sentence may not be suspended or deferred."). However, in 2002 the Legislature amended Subsection (B) for the very purpose of granting district courts discretion to suspend or defer otherwise mandatory sentences of imprisonment. *See* H.B. 26, 45th Leg., 2nd Sess. (N.M. 2002), *available at* http://www.nmlegis.gov/Sessions/02%20Regular/bills/house/HB0026.pdf (proposed 2002 Amendment). The Legislature replaced the then-existing language—"and the sentence imposed by this subsection shall not be suspended or deferred"—with the current provision

7

that grants district courts discretion, albeit not limitless, to suspend sentences when substantial and compelling reasons exist to do so.[2] *See* 2002 N.M. Laws, ch. 7, § 1(A). Because the Legislature has the power to grant or withhold discretion regarding criminal sentencing to district courts, we must assume that where discretion has been granted, the Legislature intended to allow district court judges to exercise that discretion. *See State v. Frawley*, 2007-NMSC-057, ¶ 6, 143 N.M. 7, 172 P.3d 144 (explaining that "the prescription of the mode of punishment is pre-eminently a rightful subject of legislation" (alterations, internal quotation marks, and citation omitted)); *Bybee v. City of Albuquerque*, 1995-NMCA-061, ¶ 11, 120 N.M. 17, 896 P.2d 1164 ("[W]e presume that the Legislature knows the law and acts rationally.").

{19}   The 2002 Amendment, while evincing the Legislature's acknowledgment that imposing a mandatory prison sentence on a second-time non-violent offender may not be in the interest of justice, did not grant district courts unfettered discretion to suspend a habitual offender's sentence. Rather, it opted to "regulate or restrict the circumstances in which courts may suspend sentences," as our Supreme Court has acknowledged is properly within the Legislature's purview. *State v. Mabry*, 1981-NMSC-067, ¶ 18, 96 N.M. 317, 630 P.2d 269. The Legislature restricted district courts' discretion to suspend or defer a sentence to a limited set of cases, specifically those where the defendant has no more than one prior conviction and where both the instant and prior convictions are for non-violent felony offenses. And in instances where district courts were authorized to suspend mandatory habitual offender enhancements, the Legislature regulated district courts by requiring them to articulate a factual rationale, supported by "substantial and compelling reasons," as to just why justice would not be served by a sentence of imprisonment. Yet the State would now have us effectively impose additional restrictions that would diminish further the circumstances under which a district court may suspend a habitual offender's sentence, namely "only in exceptional cases." *See Babcock*, 666 N.W.2d at 237 (internal quotation marks and citation omitted). Because we assume that "[t]he Legislature knows how to include language in a statute if it so desires[,]" *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 (internal quotation marks and citation omitted), we conclude that had the Legislature intended to limit a district court's discretion under Section 31-18-17(A) to only "exceptional cases," it would have included language to that effect. *See Greenwood*, 2012-NMCA-017, ¶ 38; *State v. Marshall*, 2004-NMCA-104, ¶ 8, 136 N.M. 240, 96 P.3d 801 ("[W]e do not read language into a statute, especially where the statute makes sense as

---

[2]While the original amendment proposed to include this grant of discretion in each of the statute's subsections, including in cases where a defendant had two or more prior felony convictions, the final version adopted by the Legislature maintained the mandatory enhancement for anyone with more than one prior felony conviction. *Compare* H.B. 26, 45th Leg., 2nd Sess. (N.M. 2002), *available at* https://www.nmlegis.gov/Sessions/02%20Regular/bills/house/ HB0026JCS.pdf *with* 2002 N.M. Laws, ch. 7, § 1, *available at* https://www.nmlegis.gov/Sessions/ 02%20Regular/FinalVersions/house/H0026.pdf.

written.").

**{20}** We hold that Section 31-18-17(A) grants district courts standard sentencing discretion that is limited only by the legislatively-imposed requirements contained in the statute. We further hold that the requirement to state "substantial and compelling reasons" for suspending a sentence should be understood by its plain meaning and is not intended to limit district courts to so act in only "exceptional cases."

**Abuse of Discretion**

**{21}** The State, relying on three distinguishable Florida cases involving downward departure sentences rather than a habitual offender enhancement, argues that the district court's reasons for suspending Defendant's sentence were not "substantial and compelling" and thus the district court abused its discretion, and erred, when it suspended the habitual offender sentence. We disagree.

**{22}** "Sentencing is reviewed for an abuse of discretion." *State v. Vasquez*, 2010-NMCA-041, ¶ 41, 148 N.M. 202, 232 P.3d 438. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted). In the context of sentencing, we afford district courts broad latitude in imposing sentences within the restrictions adopted by the Legislature. *See State v. Lavone*, 2011-NMCA-084, ¶ 9, 150 N.M. 473, 261 P.3d 1105 (explaining that "a district court must consider many factors when it makes a sentencing determination, and the court is given broad discretion to fashion a sentence appropriate to the offense and the offender" (internal quotation marks and citation omitted)); *State v. Clah*, 1997-NMCA-091, ¶ 19, 124 N.M. 6, 946 P.2d 210 (explaining that "[w]ithin the limitations of the provision prescribing the punishment for a particular offense, the [district] court has discretion to structure the sentence to best fit the defendant and the crime"). New Mexico courts have long recognized that "[r]ead in their entirety, the sentencing statutes evidence a legislative intent that the [district] court have a wide variety of options by which to sentence." *State v. Sinyard*, 1983-NMCA-150, ¶ 7, 100 N.M. 694, 675 P.2d 426. District courts are granted such broad discretion by the Legislature "because there are so many intangible and imponderable factors entering into such a decision." *State v. Serrano*, 1966-NMSC-166, ¶ 12, 76 N.M. 655, 417 P.2d 795 (internal quotation marks and citation omitted). As our Supreme Court has explained, "[t]hese matters, which are to be considered in connection with the prior record of the accused, are of such nature that the problem of probation must of necessity rest within the discretion of the judge who hears the case." *Id.* (quoting *Utah v. Sibert*, 310 P.2d 388, 393 (Utah 1957) (internal quotation marks omitted)). In other words, sentencing decisions involve myriad factors and should be left to the sound discretion of trial judges who are in the best position to assess and weigh whether justice will be served by a sentence of imprisonment or probation.

**{23}** Here, the record indicates that the district court relied heavily on the recommendation of Defendant's probation officer, Mr. Fielenbach, in reaching its decision to suspend Defendant's sentence. He testified that Defendant "has been doing well" and was "on the right track." He also explained that Defendant had obtained steady employment, which would enable Defendant to pay restitution per the terms of Defendant's prior probation, and that he was checking on Defendant regularly. The district court's judgment included the finding that "Defendant is capable of supervision at this time and is doing well on probation . . . as reported by his probation officer, Wolf Fielenbac[h]."

**{24}** Additionally, the district court explained at the hearing that suspending Defendant's sentence was warranted because "justice is better served by getting [Defendant] on probation and having [Defendant] do what [he is] supposed to do as a requirement of [his] probation." The record makes clear that the ongoing payment of restitution by Defendant was the specific term of probation with which both Mr. Fielenbach and the district court were particularly satisfied. Thus we understand the district court's suspension of Defendant's sentence to be a recognition of two important considerations: (1) the purpose and benefits of probation, *see State v. Baca*, 1977-NMCA-030, ¶ 10, 90 N.M. 280, 562 P.2d 841 (explaining that probation serves the general purposes of "education and rehabilitation. Probation assumes the best interests of the public and the offender will be served [and that] the offender can be rehabilitated without serving the suspended jail sentence"); and (2) the primacy and importance of our state's policy regarding paying restitution. *See* NMSA 1978, § 31-17-1(A) (2005) ("It is the policy of this state that restitution be made by each violator of the Criminal Code . . . to the victims of his criminal activities . . . . This section shall be interpreted and administered to effectuate this policy."); Section 31-17-1(H) ("Failure of the defendant to comply . . . with the plan of restitution . . . *may* constitute a violation of the conditions of probation or parole[.]" (Emphasis added.)); *see also State v. Lucero*, 1999-NMCA-102, ¶ 51, 127 N.M. 672, 986 P.2d 468 ("Requiring victim restitution is declarative of public policy to make whole the victim of the crime to the extent possible." (alteration, internal quotation marks, and citation omitted)). We cannot say that the district court abused its discretion in determining that such considerations were "substantial and compelling" and supported suspending the mandatory habitual offender portion of Defendant's sentence.

**{25}** We decline to adopt a seldom-attainable standard where to do what is expected (i.e., comply with the terms of probation) would rarely be enough. To do so would be to remove the possibility of reward for that which should be incentivized. Here, it is telling that the State itself expressed hesitation and uncertainty regarding imposition of the mandatory prison sentence in this case. It was the State that proposed sending Defendant to the diagnostic center for sixty days "as a stop-gap measure, an in-between measure," as the prosecutor described it. However, Section 31-18-17(A) does not, in fact, provide district courts with the option of a diagnostic commitment as does NMSA 1978, Section 31-20-3 (1985). When even the State thought it justified to sentence Defendant in a way that avoided mandatory, immediate imprisonment, we can hardly see how the district court's concurrence on that point can be characterized as an abuse of discretion.

**{26}** As this Court has previously explained, "[j]udicial discretion is a discretion guided by law, caution, and prudence; it is an equitable determination of what is just and proper under the circumstances." *State v. Madrigal*, 1973-NMCA-116, ¶ 33, 85 N.M. 496, 513 P.2d 1278 (omission, internal quotation marks, and citations omitted). "It is not a mere whim or caprice, but an honest attempt, the exercise of power and duty, to see that justice is done." *Id.* (omission, internal quotation marks, and citation omitted). We conclude that the district court in this case properly considered myriad factors and made an honest attempt to see that justice is done under the particular circumstances of this case. We do not mean to say that the capability of a defendant to pay restitution is, alone, always a sufficient reason to suspend a habitual offender sentence. Or that compliance with probation, stable employment, and expectant parenthood—either individually or when aggregated—necessarily constitute "substantial and compelling reasons" for suspending a sentence in every case. However, given the facts of this case, we cannot say that the district court's decision to suspend Defendant's habitual offender sentence was "clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citations omitted).

**CONCLUSION**

**{27}** Because the district court complied with the requirements of Section 31-18-17(A) and did not abuse its discretion in determining that there were substantial and compelling reasons for suspending Defendant's sentence, we affirm.

**{28}  IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**M. MONICA ZAMORA, Judge**