This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**JAMES SNEED, JR.,**
**Plaintiff-Appellant,**
**v.**
**STEPHAN A. VAUGHN,**
**Defendant-Appellee,**
**and**
**GREGG MARCANTEL and ELKE JACKSON,**
**Defendants.**

Docket No. A-1-CA-36191
COURT OF APPEALS OF NEW MEXICO
May 31, 2019

APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY, Cindy M. Mercer, District Judge

**COUNSEL**

Stephen F. Lawless, PA, Stephen F. Lawless, Albuquerque, NM for Appellant

Kennedy, Moulton & Wells, Debra J. Moulton, Albuquerque, NM for Appellee.

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR: KRISTINA BOGARDUS, Judge MEGAN P. DUFFY, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** After four years of incarceration for trafficking in cocaine and possession of marijuana, Plaintiff filed a complaint alleging that Defendant Dr. Stephen Vaughn, then the Chief Medical Administrator for the New Mexico Department of Corrections (NMDOC), violated his Eighth Amendment right to be free of cruel and unusual

punishment by acting with deliberate indifference to Plaintiff's medical care. U.S. const. amend. VIII. After a three-day bench trial, the district court found that Defendant had not acted with deliberate indifference and entered judgment in Defendant's favor. We affirm.

**Background**

{2}     The following facts derive largely from the district court's findings of fact, which are unchallenged on appeal. In February 2009, Plaintiff was diagnosed with end-stage renal disease and began treatment by dialysis three days per week. Roughly eight months later, in October 2009, Plaintiff was convicted by a jury of one count of trafficking cocaine and one count of possession of marijuana. The mandatory sentence for these convictions was eighteen years' incarceration. Between the conviction and sentencing for those convictions, Plaintiff was monitored by ankle monitor pursuant to his sentence in a prior, unrelated federal matter. During this time, Plaintiff continued with dialysis and worked with University Medical Center (UMC) in Lubbock, Texas to complete the testing and other tasks required before he could be added to the United Network for Organ Sharing (UNOS) list to receive a kidney from a deceased donor. In addition, Plaintiff's son expressed interest in donating a kidney, but never completed the testing to determine whether he was an appropriate donor for his father.

{3}     In preparation for sentencing, Judge Steven Quinn held a hearing on April 29, 2010. During the hearing, Judge Quinn telephoned Defendant. Judge Quinn told Defendant that Plaintiff was "on line for a kidney transplant" and asked if it was possible for NMDOC to take Plaintiff to UMC as needed for pre-operative appointments and then the operation itself. Defendant responded:

> Absolutely. A person doesn't lose their right to access to transplant if they are incarcerated. I would have to work on that with the, oh, our central office but, uh, medically necessary transport out of state for the purposes of inmate care, um, I would expect to say its mandatory and that can't be compromised . . . I'll make sure it happens.

Defendant based his statements to Judge Quinn on his impression that Plaintiff had already been approved by a transplant board for a kidney transplant and that it was scheduled in the very near future. Defendant also explained that there were transportation challenges because the NMDOC's custody ends at the New Mexico border. Judge Quinn asked Defendant to research the NMDOC's ability to transport Plaintiff to Texas and stated that he would contact Defendant again for a May hearing.

{4}     After the April 29, 2010 hearing, Defendant contacted Plaintiff's Transplant Coordinator at UMC to discuss Plaintiff's progress toward a kidney transplant and learned that Plaintiff's son had not been evaluated for transplant, Plaintiff had not been approved for transplant, and there was some question about whether he would be approved. Then, at a hearing on May 5, 2010, Judge Quinn again contacted Defendant by telephone and asked Defendant whether Plaintiff was "qualified for transplant and all that." Defendant told Judge Quinn that Plaintiff's candidacy for transplant was at the

discretion of the transplanting facility, UMC would not accept Plaintiff, and Plaintiff's son had not been matched with Plaintiff for transplant. He also stated that, based upon his discussion with UMC, a kidney transplant was not certain for Plaintiff. According to Defendant, if somebody is a good transplant candidate pursuant to the rules of the transplant hospital and the hospital approves him for transplant, the State's position is to support it. Finally, Defendant told Judge Quinn NMDOC would be able to continue Plaintiff's dialysis treatments if Plaintiff was placed into the custody of the NMDOC. After questioning Defendant, Judge Quinn terminated the call. Defendant was not involved in the rest of the sentencing proceedings.

**{5}** At the end of the May 5, 2010 hearing, Judge Quinn stated that Plaintiff would be remanded to the custody of the NMDOC with assurances he would receive dialysis three times per week and would be transported to Lubbock whenever it was necessary. However, the written judgment and sentence did not mention these conditions. Instead, it ordered that Plaintiff be released on furlough to undergo surgery on April 22, 2010, and recommended placement at the NMDOC's Los Lunas facility "for medical provisions." It did not include any other mention of Plaintiff's medical issues.

**{6}** While incarcerated, Plaintiff, who was receiving dialysis three times a week communicated with Defendant several times about his medical care. In June and July 2010, Plaintiff submitted an inmate formal complaint and inmate grievances requesting information about transportation to Lubbock for tests and appointments related to a kidney transplant. Defendant responded in August 2010 in writing, stating that the legal department had reviewed the judgment and sentence and that NMDOC could assist the UMC with blood draws and medical feedback but could not facilitate transport to and from Lubbock. Defendant also stated that solid organ transplantation requires "patient availability and mobility," which it could not accommodate "under the terms of Plaintiff's sentence."

**{7}** During his incarceration, Plaintiff filed both a petition for writ of habeas corpus, in 2012, and the civil complaint presently at issue, in 2014. Judge Quinn presided over the habeas petition. In a November 2012 order, he recounted his communication with Defendant:

> Prior to sentencing [Plaintiff] to [NMDOC] for the mandatory 18 years, the [district c]ourt placed a call to the [NMDOC] Medical Office and spoke with [Defendant], the Director. [Defendant] assured the Court that if [Plaintiff] was incarcerated at the department of corrections, transportation arrangements could be made to send [Plaintiff] to Lubbock for kidney transplant. Accordingly, the Court sentenced [Plaintiff] to begin serving the 18[-]year commitment.

Plaintiff's habeas argument, as paraphrased by Judge Quinn, echoed his argument here: "NMDOC refused to transport [Plaintiff] to Lubbock for a kidney transplant contrary to pre-sentence assurances that they would." In return for withdrawal of Plaintiff's petition, the State agreed to stipulate to mitigation of Plaintiff's sentence and, in March

2016, Judge Quinn issued a second amended judgment and sentence in which he found "that due to the medical condition of [D]efendant, . . . mitigating circumstances exist and . . . the sentence imposed in Count 1 shall be mitigated by one third (1/3)." As a result of the amendment and various credits against his sentence, Plaintiff was released in April 2016, after six years of incarceration. Trial on the present civil complaint began approximately three months later. Plaintiff states in his reply brief that he received a kidney transplant "within a short period of a few months" after his release in April 2016.

**Discussion**

{8}     "Claims of denial of appropriate medical treatment . . . can violate the Eighth Amendment's prohibition on cruel and unusual punishment." *Griffin v. Penn*, 2009-NMCA-066, ¶ 8, 146 N.M. 610, 213 P.3d 514. To state a cognizable claim under the Eighth Amendment[1], "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Griffin*, 2009-NMCA-066, ¶ 9 (internal quotation marks and citation omitted). The "deliberate indifference" standard includes both an objective component and a subjective component. *Id.* "To satisfy the objective component of the deliberate indifference test and demonstrate a cognizable violation of the Eighth Amendment, Plaintiff must demonstrate an injury that is sufficiently serious." *Id.* (internal quotation marks and citation omitted). A "sufficiently serious" injury requiring care includes "the presence of a medical condition that significantly affects an individual's daily activities[] or the existence of chronic and substantial pain." *Id.* (internal quotation marks and citation omitted). "The subjective component requires a showing that an officer acted with a sufficiently culpable mental state." *Id.* Hence, "inadvertent failure to provide adequate medical care or a negligent diagnosis fails to establish the requisite culpable state of mind." *Cordova*, 2004-NMSC-026, ¶ 30 (alterations, internal quotation marks, and citation omitted). Finally, a "difference of opinion as to proper or reasonable treatment between the inmate and prison medical personnel does not constitute cruel and unusual punishment." *Id.* ¶ 33.

{9}     As we understand it, Plaintiff's foundational premise is that his incarceration was inherently cruel because the NMDOC was incapable of addressing his kidney disease by facilitating a kidney transplant.[2] We have held that, even when a sentence is mandatory under NMSA 1978, Section 31-18-15 (2016), "it is possible . . . that a prison term would violate the prohibition against cruel and unusual punishment as applied to a particular defendant." *State v. Arrington* (*Arrington I*), 1993-NMCA-055, ¶ 9, 115 N.M. 559, 855 P.2d 133; *see id.* ¶ 10 (noting that a sentence may be "inherently cruel" in

---

[1] Although Plaintiff cited both the New Mexico and United States constitutions in his complaint, his arguments on appeal pertain only to the Eighth Amendment to the United States Constitution. *See Cordova v. LeMaster*, 2004-NMSC-026, ¶ 8, 136 N.M. 217, 96 P.3d 778 (addressing claims only under the federal constitution).

[2] We note that it is unclear whether the Eighth Amendment applies in this case as, for it to do so, there must be some tie between Defendant's actions and actual post-conviction punishment. *See Graham v. Connor*, 490 U.S. 386, 393 (1989) ("[T]he Eight Amendment's protections did not attach until after conviction and sentence."). Nevertheless, because the parties and the district court have treated the issue as one purely stemming from the Eighth Amendment, we do so as well.

"exceedingly rare cases"). In *Arrington I*, for example, the district court declined to sentence the defendant to incarceration on the ground that incarceration would deprive the defendant of adequate treatment for her medical condition. *See id.* ¶ 11. This Court affirmed, stating that "[t]he evidence was uncontroverted that incarceration would be life-threatening to [the d]efendant and that adequate medical care would not be available to her in a correctional facility." *Id.*. However, when, two years later, the same defendant appealed a subsequent district court order remanding her to custody in the same facility on new charges, this Court affirmed her sentence because, unlike the evidence presented in *Arrington I*, the evidence "would support a determination that the medical care available to [the d]efendant in prison would likely be superior to what she could otherwise obtain." *State v. Arrington* (*Arrington II*), 1995-NMCA-057, ¶ 6, 120 N.M. 54, 897 P.2d 241. The *Arrington* cases are not directly on point because they do not address the deliberate indifference of individual defendants in a civil suit. Nevertheless, they demonstrate that lack of access to medical care for a defendant's specific condition may be an important concern for the sentencing court, as it was here.

**{10}** Plaintiff argues that Defendant misled Judge Quinn about the NMDOC's ability to facilitate a kidney transplant and that, as a result, Judge Quinn sentenced Plaintiff to incarceration, which was inherently cruel because it denied Plaintiff a transplant and subjected him to years of difficult and life-shortening dialysis. Plaintiff asserts that "the reason a [kidney] transplant could not be provided is because of the reckless actions and omissions and misstatements by Defendant . . . [which] placed [Plaintiff] in prison," that Defendant's "reckless misstatements" constitute deliberate indifference to his medical care, and that the district court erred in concluding otherwise. Plaintiff's arguments on appeal therefore focus specifically on Defendant's actions in the sentencing proceedings, i.e., before Plaintiff was committed to NMDOC's custody.

**{11}** We review the district court's ruling de novo. *State v. Ira*, 2002-NMCA-037, ¶ 17, 132 N.M. 8, 43 P.3d 359 ("Whether a particular sentence amounts to cruel and unusual punishment raises a constitutional question of law that we review de novo on appeal."). "However, because a cruel and unusual punishment challenge necessarily focuses on the factual circumstances of the particular case, we view the facts in the light most favorable to the district court's decision and defer to the district court on evidentiary matters of weight and credibility." *Id.* We accept those findings of fact that are supported by substantial evidence. *See Arrington I*, 1993-NMCA-055, ¶ 13 (noting that "substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion").

**{12}** Although Plaintiff states that this Court should assess the "sufficiency of the evidence," he did not specifically challenge the district court's findings of fact in his brief in chief. Defendant argued that, consequently, this Court is bound by the district court's findings of fact. *See* Rule 12-318(A)(4) NMRA (stating that in the brief in chief, an appellant shall "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive"). In his reply brief, Plaintiff responded that he "has directly challenged" ten specific findings of fact. Other than this single assertion, however, Plaintiff does not address the substance of the findings nor specify how the district court

erred in its assessment of the evidence. Rather, in his briefing, Plaintiff "discussed only those facts which [he] argues tend to show that some of the district court's findings were contradicted" and "wholly fail[ed] to address the substance of all the evidence bearing on the findings." *Wachocki v. Bernalillo Cty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 17, 147 N.M. 720, 228 P.3d 504, *aff'd*, 2011-NMSC-039, ¶ 1, 150 N.M. 650, 265 P.3d 701. "In doing so, [Plaintiff] . . . did not demonstrate how the evidence supporting the district court's findings fails to amount to substantial evidence." *Wachocki*, 2010-NMCA-021, ¶ 17. Under these circumstances, we decline to address Plaintiff's sufficiency of the evidence argument. *See id.*

{13}    Our focus, then, is on the district court's legal conclusion that the findings of fact, to which we are bound, failed to demonstrate that Defendant acted with deliberate indifference to Plaintiff's medical care. The district court did not make a finding specifically addressing the objective component of the deliberate indifference analysis. Nevertheless, assuming that component is satisfied, we conclude that the subjective component was not. As to the subjective component, the district court found as follows:

> [6]c.    [Defendant] based his statements to Judge Quinn [at the April 29, 2010 hearing] on his impression that Plaintiff had already been approved by a transplant board for a kidney transplant and that it was scheduled in the very near future.
>
> . . . .
>
> 9.    Judge Quinn contacted Defendant . . . at the subsequent hearing held on May 5, 2010 and asked him to give an update as to being able to meet Plaintiff's needs "if he's, uh, qualified for transplant and all that." Defendant . . . provided the following information:
>
> a.    Defendant . . . provided the information from the [UMC] Transplant Coordinator including that Plaintiff's candidacy for transplant was at the discretion of the transplanting facility, that UMC would not accept Plaintiff, and that Plaintiff's son had not been matched with Plaintiff for transplant.
>
> b.    Defendant . . . also stated that based upon his discussion with UMC, Plaintiff was not that far along towards an evaluation and that a kidney transplant was by no means a certain thing. They were still unsure whether he would be a good candidate for it.
>
> c.    Defendant . . . stated that if Plaintiff was placed into the custody of the [NMDOC], NMDOC did have the capabilities to continue him on his dialysis treatments.
>
> d.    Defendant . . . further stated the position of the State is that if somebody is a good transplant candidate pursuant to the rules of that transplant hospital and they approve him for transplant, the State will support it.

e.     Judge Quinn advised Defendant . . . "we may be contacting you further." The call with [Defendant] was terminated and he was absent for the remainder of the discussions during the hearing.

10.     Following the two (2) hearings, Judge Quinn ordered  . . . Plaintiff remanded to the custody of the NMDOC with verbal assurances he would receive dialysis three (3) times per week and would get transported to Lubbock whenever it was necessary.

. . . .

[25]h.  Although Defendant . . . mistakenly understood in 2010 that the University of New Mexico did not provide transplants for inmates, Dr. Kumar informed Plaintiff that there were facilities that provided transplant options in New Mexico.

. . . .

26.     When Defendant Vaughn reviewed the Jμdgment [sic], Sentence, Commitment and Order Partially Suspending Sentence and Amended Judgment[sic], it lacked any reference to a requirement to facilitate Plaintiff's transport to and from Lubbock, Texas during his incarceration.

We agree with the district court that these facts do not demonstrate that Defendant acted with "a sufficiently culpable mental state." *Griffin*, 2009-NMCA-066, ¶ 9. Defendant made the statement that NMDOC could "absolutely" transport Plaintiff to Lubbock for a kidney transplant in the context of his understanding that Plaintiff had been approved for a transplant and that surgery was imminent. The subsequent statement that NMDOC "would support" a transplant if a hospital approved it followed Defendant's recitation of information from the UMC transplant coordinator, to wit: UMC would not perform a transplant for Plaintiff and Plaintiff's son had not been approved as a donor. Thus, Defendant's statement about NMDOC's future support was general and theoretical. Under these circumstances, Defendant's statements in the April and May hearings do not constitute deliberate indifference to Plaintiff's care. Moreover, the district court found that Defendant "mistakenly" stated that the University of New Mexico did not perform kidney transplants. A finding that Defendant was mistaken precludes the conclusion that he made the statement with deliberate indifference. *Cf. Archuleta v. Goldman*, 1987-NMCA-049, ¶ 5, 107 N.M. 547, 761 P.2d 425 ("Inadvertent failure to provide adequate medical care, e.g., negligent diagnosis or treatment does not . . . state a valid cause of action under Section 1983."). In addition, the district court found that Defendant was not present when Judge Quinn stated the conditions upon which Plaintiff would be committed to NMDOC's custody. Consequently, Defendant had no knowledge of those conditions and no opportunity to clarify whether NMDOC could transport Plaintiff to Lubbock "whenever necessary." Finally, the judgment and sentence did not include Judge Quinn's oral conditions. To the extent Plaintiff argues that Defendant recklessly ignored the terms of his sentence, we conclude that Defendant could not

have been deliberately indifferent to conditions of Plaintiff's sentence of which he was unaware.

**{14}**    Viewing the district court's findings of fact in the light most favorable to its legal conclusion, *see Ira*, 2002-NMCA-037, ¶ 17, we conclude that the facts here do not rise to deliberate indifference. *See Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 30, 144 N.M. 314, 187 P.3d 179 (stating that "allegations of conduct that is merely negligent are insufficient to establish such a constitutional violation"); *cf. Archuleta*, 1987-NMCA-049, ¶ 5 (stating that only medical care so "woefully inadequate as to amount to no treatment at all[]" may "evidenc[e] a constitutional violation" (internal quotation marks and citation omitted)). Conclusion

**{15}**    For the foregoing reasons, we affirm the district court's conclusion that Defendant did not act with deliberate indifference to Plaintiff's medical care and its judgment in favor of Defendant.

**{16}    IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**