# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-068

Filing Date: July 29, 2019

NO. A-1-CA-35994

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**THOMAS CHAVEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNANLILLO COUNTY**
**Charles W. Brown, District Judge**

Certiorari Denied, September 6, 2019, No. S-1-SC-37874. Released for Publication November 12, 2019.

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** Defendant Thomas Chavez, a convicted sex offender, appeals the district court's order that his supervised probation be continued for an additional two and one-half years following his initial, mandatory five-year probationary term under NMSA 1978, Section 31-20-5.2(B) (2003). Defendant argues that the district court's order should be reversed because (1) the statute is void for vagueness, or (2) the State failed to meet its

burden under the statute of proving to a reasonable certainty that Defendant should remain on probation for an additional period of time. We conclude that, as a matter of first impression, Section 31-20-5.2(B) is not void for vagueness. We also conclude that the appropriate standard of review for whether the State met its burden is abuse of discretion. The district court did not abuse its discretion in concluding that the State proved to a reasonable certainty that Defendant should remain on probation, and we affirm.

**BACKGROUND**

**{2}**     In 2007, Defendant pled guilty to two counts of criminal sexual contact of a minor (CSCM) and contributing to the delinquency of a minor. Defendant was sentenced to twenty-two and one-half years' imprisonment, all but five of which were suspended. In accordance with Section 31-20-5.2(A), Defendant was also sentenced to an indeterminate period of supervised probation of not less than five and not more than twenty years. *See id.* ("When a district court defers imposition of a sentence for a sex offender, or suspends all or any portion of a sentence for a sex offender, the district court shall include a provision in the judgment and sentence that specifically requires the sex offender to serve an indeterminate period of supervised probation for a period of not less than five years and not in excess of twenty years."). Defendant was placed on probation beginning on September 6, 2011, but was not released from prison until the end of 2013 because he did not have a place to reside upon being paroled, and a bed was not available at a halfway house until then.

**{3}**     In April 2016, near the end of Defendant's initial five-year period of probation, the State filed a motion under Section 31-20-5.2(B) requesting that Defendant remain on probation for an additional two and one-half years. The district court held hearings on the State's motion in August and September 2016. The State highlighted that Defendant accumulated "over a hundred offenses" related to his Global Positioning System (GPS) electronic monitoring that occurred while he was on probation, as well as the fact that Defendant served two years of parole in custody, which reduced the period of time Defendant served on probation within the community. The State also pointed out that during his interview for his pre-sentence report (PSR), Defendant stated that if he was stressed, he could recidivate.

**{4}**     Defendant argued that "the State has not presented sufficient evidence to prove to a reasonable certainty that [he] should remain on probation." Defendant emphasized that his probation had never been revoked. Defendant acknowledged that his probation officer filed reports on two GPS violations and sanctioned him with fifty-two hours of community service, but argued that with respect to the first written-up GPS violation, Defendant did not know his GPS unit was out of contact with the larger monitoring system. Regarding the second written-up GPS violation, Defendant argued that, although his location was unknown for thirty-four minutes in the middle of the night because his GPS unit's battery had died, he plugged it in as soon as he realized it was dead, and, lacking his own transportation, he could not have gone anywhere during the time his GPS unit was offline.

**{5}** Defendant asserted that the State did not provide the district court with "behavioral type facts . . . for why [Defendant] is in need of more rehabilitative services." Defendant also contested his probation officer's conclusion that he would benefit from continued probation, arguing, "[I] think the State can make that argument for every single person on probation. . . . [T]hat's not what the burden is here for the State and that's not what the purpose of probation is. The statute doesn't say the [district c]ourt should look and see if somebody could benefit from another two and one-half years of probation. [Defendant] has almost wholly complied with his term of probation, and he's done it pretty well." Finally, Defendant discounted his statement during his PSR interview that if stressed he might recidivate, arguing that since then he has taken advantage of mental and physical health care to manage his stress, and that he has registered as a sex offender as required every quarter.

**{6}** At the conclusion of the hearings, the district court acknowledged that "[i]n some ways, the [d]efendant always gets hammered . . . [I]f the [d]efendant[ is] doing well on conditions of release, then [the State] argue[s,] 'Hey, it's working, therefore we need to . . . keep him on it. If he's not doing well, it shows we need to keep him on it.' So that's one of those things which carries . . . very little weight as far as what you look at." Nonetheless, the district court found that "[t]here were two violations" and granted the State's motion although "Defendant has made progress[.]" The district court then ordered Defendant to remain on probation for another two and one-half years with the same terms and conditions as before, but eliminated GPS monitoring. Defendant's timely appeal followed.

## DISCUSSION

### I.     Section 31-20-5.2(B) Is Not Void for Vagueness

**{7}** Section 31-20-5.2(B) provides:

> A district court shall review the terms and conditions of a sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, the district court shall also review the duration of the sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, at each review hearing the state shall bear the burden of proving to a reasonable certainty that the sex offender should remain on probation.

Defendant challenges the last sentence of this provision as void for vagueness, arguing that it does not provide "guidance . . . as to the factors a court should rely upon" in deciding whether a defendant should remain on probation. Defendant elaborates that it is "unclear . . . what the State must prove to continue [Defendant] on probation[,]" and that "[t]he [L]egislature did not properly define the measure by which to [decide] extensions brought under Section 31-20-5.2(B)."

**{8}**      The State responds that "a reasonable and practical construction of the language contained in Section 31-20-5.2(B) provides adequate guidance as to a district court's determination as to duration of a sex offender's probation." The State contends that "Section 31-20-5.2(B) is a sentencing provision that, like other sentencing provisions, the Legislature intended to be broad; and it provides a district court with the discretion to consider a myriad of factors in determining whether a sex offender should remain on supervised probation after the initial five-year period." Specifically, the State argues, the phrase "reasonable certainty" from Section 31-20-5.2(B) is an "objective standard of proof" that provides "a workable guideline for a district court to determine whether to continue a sex offender's supervised probation." Similarly, the State argues that the phrase "should remain on probation" is a "workable guideline for a district court to objectively apply under the facts and circumstances in each case." According to the State, the broad discretion that Section 31-20-5.2(B) grants district court judges does not make the statute impermissibly vague.

## A.      Standard of Review

**{9}**      A vagueness challenge to the constitutionality of a statute is grounded in the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *See* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); *Kolender v. Lawson*, 461 U.S. 352, 353-54 (1983) ("We conclude that the statute as it has been construed is unconstitutionally vague within the meaning of the Due Process clause of the Fourteenth Amendment by failing to clarify what is contemplated by the requirement that a suspect provide a 'credible and reliable' identification."); *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) ("A law . . . may . . . be challenged on its face as unduly vague[] in violation of due process. . . . [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." (internal quotation marks and citation omitted)); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). "We review a vagueness challenge de novo in light of the facts of the case and the conduct which is prohibited by the statute." *State v. Smile*, 2009-NMCA-064, ¶ 17, 146 N.M. 525, 212 P.3d 413 (internal quotation marks and citation omitted). "[B]ecause there is a strong presumption of constitutionality underlying each legislative enactment, [the d]efendant has the burden of proving the statute is unconstitutional beyond all reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted). Defendant can meet this burden in two ways:

> He can either demonstrate that the statute fails to allow individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited, or he can demonstrate that the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application.

*Id.* ¶ 18 (alteration, internal quotation marks, and citation omitted). Here, Defendant advances his challenge based only on the second prong of the vagueness analysis— that is, he contends that Section 31-20-5.2(B) "permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement" of that which the statute permits. *See Smile*, 2009-NMCA-064, ¶ 18 (internal quotation marks and citation omitted).

**{10}** "Appellate courts have a duty to construe a statute in such a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language." *State v. Duttle*, 2017-NMCA-001, ¶ 13, 387 P.3d 885 (internal quotation marks and citation omitted). Determining whether Section 31-20-5.2(B) is vague requires us to engage in statutory interpretation, which we review de novo. *See Duttle*, 2007-NMCA-001, ¶ 14. "Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature." *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted). "The legislative history of the statute, including historical amendments, and whether it is part of a more comprehensive act, is instructive when searching for the spirit and reason the Legislature utilized in enacting the statute." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (citation omitted). "We begin by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language." *Duttle*, 2017-NMCA-001, ¶ 14 (internal quotation marks and citation omitted). "When a statute contains language which is clear and unambiguous, the appellate courts must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration, internal quotation marks, and citation omitted). In reviewing a statute to determine whether it is unconstitutionally vague, "[t]he statute must be read and considered as a whole so as to ascertain its legislative intent, and the statute's words and phrases are to be considered in their generally accepted meaning." *State v. Segotta*, 1983-NMSC-092, ¶ 5, 100 N.M. 498, 672 P.2d 1129. "All of the provisions of a statute, together with other statutes in pari materia [on the same subject], must be read together to ascertain legislative intent." *Davis*, 2003-NMSC-022, ¶ 12.

**{11}** Additionally, we review void-for-vagueness constitutional claims even when they are not preserved below. *State v. Laguna*, 1999-NMCA-152, ¶ 23, 128 N.M. 345, 992 P.2d 896. Defendant does not indicate how he preserved his vagueness challenge below nor does our review of the record so indicate, and thus we presume it was not preserved, although we nonetheless proceed to reviewing it.

## B. Analysis

**{12}** To determine that Section 31-20-5.2(B) "permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application[,]" *Smile*, 2009-NMCA-064, ¶ 18, Defendant asks us to find two phrases from Section 31-20-5.2(B) unconstitutionally vague: "reasonable certainty" and "should remain on probation."

**{13}** Beginning with "reasonable certainty," we first look to its plain meaning. "Reasonable" is defined as "[f]air, proper, or moderate under the circumstances; sensible." *Reasonable*, Black's Law Dictionary (11th ed. 2019). "Certainty" is defined as "[t]he quality, state, or condition of being indubitable or certain, esp[ecially] upon a showing of hard evidence" or "[a]nything that is known or has been proven to be true." *Certainty*, Black's Law Dictionary (11th ed. 2019). In case law, "reasonable certainty" is typically used in the context of a probation violation hearing, in which we have held the term to mean "the [s]tate must introduce evidence that a reasonable and impartial mind would be inclined to conclude that the defendant has violated the terms of probation." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493. We are guided, if not bound by, *Leon*'s definition of the term "reasonable certainty" despite our recognition that Section 31-20-5.2(B) is part of the sentencing article of the criminal procedure chapter of the New Mexico Statutes Annotated. But given that the phrase "reasonable certainty" does not appear elsewhere within the sentencing article, we are unable to rely on other statutory sentencing provisions to help supply the plain meaning of "reasonable certainty."

**{14}** Next, looking to the intent of the Legislature, when the bill that was eventually codified as the amended Section 31-20-5.2(B) was being drafted, the initial draft did not specify the state's burden of proof. Indeed, the Fiscal Impact Report for the bill reflected feedback from the Office of the New Mexico Attorney General that, among other provisions it lacked, "[t]he procedure for review at two and one-half year intervals fails to address burden of proof[.]" Fiscal Impact Report, H.B. 2, 3, 4, and 8, 46th Leg., 1st Special Sess., 10 (N.M. Oct. 31, 2003) https://www.nmlegis.gov/Sessions/03%20Special/firs/HB0002.pdf. The version of the bill that passed the Legislature ultimately specified that the burden of proof was "reasonable certainty." House Bills 2, 3, 4, 5, and 8, 46th Leg., 1st Special Sess., 19 (N.M. 2003) https://www.nmlegis.gov/Sessions/03%20Special/FinalVersions/house/HB0002.pdf. From this legislative history, it is clear that the Legislature considered and intended to use the phrase "reasonable certainty" to describe the State's burden of proof for whether a sex offender should remain on probation, one with which the State and some, if not all, probationers are familiar by virtue of its use in the probation revocation context.

**{15}** Guided as we are first by the words chosen by the Legislature, and aided by the manner in which our case law defines "reasonable certainty" in a circumstance which we view to present a similar inquiry, we conclude the plain meaning of "reasonable certainty" is clear. In resolving whether a probationer should remain on probation for additional time under Section 31-20-5.2(B), reasonable certainty means evidence that a reasonable and impartial mind would be inclined to conclude justifies that the sex offender should remain on probation. *See Leon*, 2013-NMCA-011, ¶ 36.

**{16}** We next assess the meaning of the phrase "should remain on probation." This time, our answer derives from the plain meaning of the words themselves, which are self-explanatory when considered within the overarching statute of which they are part. Moreover, in considering whether the plain language lacks sufficient applicatory guidance, Section 31-20-5.2(A) contains a list of relevant factors for a district court to

consider in deciding the terms and conditions of a sex offender's supervised probation, once the district court has decided to either defer imposition or suspend any portion of a sex offender's sentence:

> (1)     the nature and circumstances of the offense for which the sex offender was convicted or adjudicated;
>
> (2)     the nature and circumstances of a prior sex offense committed by the sex offender;
>
> (3)     rehabilitation efforts engaged in by the sex offender, including participation in treatment programs while incarcerated or elsewhere;
>
> (4)     the danger to the community posed by the sex offender; and
>
> (5)     a risk and needs assessment regarding the sex offender, developed by the sex offender management board of the New Mexico sentencing commission or another appropriate entity, to be used by appropriate district court personnel.

While the provision at issue, Section 31-20-5.2(B), is challenged by Defendant as impermissibly vague, we are obliged to read and consider Section 31-20-5.2 "as a whole so as to ascertain its legislative intent, and the statute's words and phrases are to be considered in their generally accepted meaning." *Segotta*, 1983-NMSC-092, ¶ 5. In doing so, we conclude that in deciding whether a sex offender should remain on probation under Section 31-20-5.2(B), the district court may remain guided by the relevant factors set forth in Section 31-20-5.2(A).

**{17}**    Defendant argues that these factors "should no longer be relevant in deciding whether to continue probation" because two of the five are inapplicable to a post-incarceration probation-extension query. But beyond this bare-bones argument, Defendant advances no legal reason why the district court cannot, or should not, utilize the factors from Section 31-20-5.2(A), along with information—standard to any probationary inquiry—related to a defendant's performance on probation in deciding whether a sex offender should remain on probation under Section 31-20-5.2(B). We acknowledge that determining the terms and conditions of a sex offender's supervised probation is a somewhat different inquiry from deciding whether a sex offender should remain on probation, but both inquiries are part and parcel of the same overarching purpose of Section 31-20-5.2, which is to provide guidance to the district court in adjudicating a sex offender's indeterminate period of supervised probation. Because we must read "[a]ll of the provisions of a statute" together, *Davis*, 2003-NMSC-022, ¶ 12, we look to Section 31-20-5.2(A) in interpreting Section 31-20-5.2(B)'s "should remain on probation" language. We do not engage in further statutory interpretation of the phrase "should remain on probation," such as analysis of the Legislature's intent in including the phrase in the statute, since it is not ambiguous and its plain meaning is clear from

the words themselves and the phrase's statutory context. *See Duttle*, 2017-NMCA-001, ¶ 14 ("When a statute contains language which is clear and unambiguous, the appellate courts must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)).

**{18}** Because "reasonable certainty" has a specific meaning that has been clearly defined by analogous case law, and "should remain on probation" has a clear plain meaning with applicable statutory standards, we decline to hold that Section 31-20-5.2(B) is so vague that "the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application." *Smile*, 2009-NMCA-064, ¶ 18 (internal quotation marks and citation omitted). First, by its very terms the statute does not permit its arbitrary and discriminatory enforcement. As we have discussed, "reasonable certainty" is defined in the case law. *See Leon*, 2013-NMCA-011, ¶ 36 (defining reasonable certainty in the context of probation violations). Second, the discretionary factors identified in Section 31-20-5.2(A) can also be utilized by district court judges in a consistent manner to evaluate whether a sex offender should remain on probation under Section 31-20-5.2(B). *See Duttle*, 2017-NMCA-001, ¶ 13 ("Appellate courts have a duty to construe a statute in such a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language." (internal quotation marks and citation omitted)).

**{19}** Considered as part of the statute by which district courts make discretionary custodial or probationary determinations in the context of the uniquely pernicious offense of child sexual abuse, Section 31-20-5.2(B) simply cannot be read to lack "standard or guidelines" such that it encourages "subjective and ad hoc application." *See Smile*, 2009-NMCA-064, ¶¶ 18, 20-21 (describing the appellant's burden in challenging a statute on grounds of vagueness and concluding that the aggravated stalking statute was not unconstitutionally vague because it had "clear guidelines regarding what circumstances will escalate the misdemeanor crime to a felony offense[,]" and because the prosecutor's choice to charge the defendant with felony aggravated stalking "did not require any arbitrary discretion"); *see also Segotta*, 1983-NMSC-092, ¶ 8 (concluding that NMSA 1978, Section 31-18-15.1 (1979, amended 2009), a sentencing statute, was not void for vagueness simply because it asked the court "to exercise independent judgment if it determined that extraordinary mitigating or aggravating circumstances were present," and because the phrase " 'aggravating or mitigating circumstances' . . . has a long history and appears in the sentencing statutes of other states[,]" even though the statute did not directly define aggravating or mitigating circumstances); *State v. Greenwood*, 2012-NMCA-017, ¶ 46, 271 P.3d 753 (finding that NMSA 1978, Section 30-47-4(D) (1990) (abuse of a resident; criminal penalties) was not unconstitutionally vague because a "prosecutor, judge, or jury [can] distinguish between innocent conduct and conduct threatening harm," and thus it did not matter that the statute did not "require the neglect to occur within or by a person employed by a care facility" (internal quotation marks and citation omitted)); *Laguna*, 1999-NMCA-152, ¶ 33 (concluding that the distinction between the first and second

degree offenses in the kidnapping statute was not unconstitutionally vague because it did not afford "too much discretion to the police and too little notice to citizens[,]" and an officer, prosecutor, judge, or jury would be able "to distinguish between innocent conduct and conduct threatening harm" (internal quotation marks and citations omitted)); *State v. Andrews*, 1997-NMCA-017, ¶ 13, 123 N.M. 95, 934 P.2d 289 (holding that the concealing identity statute, NMSA 1978, Section 30-22-3 (1963), which criminalized concealing one's true name or identity, was not so vague that it encouraged arbitrary or discriminatory law enforcement because "[t]he officer's inquiry is limited . . . to what is necessary to perform a lawful duty, which . . . was to check on the validity of the driver's license [and stating that t]he statute does not permit open-ended inquiry or inquiry without standards").

**{20}** Lastly, we also agree with the State that Section 31-20-5.2(B)'s broad grant of discretion to the district court, which is similar to that discretion granted by Section 31-20-5.2(A), or most any other sentencing statute, does not itself render the statute void for vagueness. After all, "New Mexico courts have long recognized that read in their entirety, the sentencing statutes evidence a legislative intent that the district court have a wide variety of options by which to sentence." *State v. Lindsey*, 2017-NMCA-048, ¶ 22, 396 P.3d 199 (alterations, internal quotation marks, and citation omitted). The district court's discretion under Section 31-20-5.2(B) to order a sex offender to remain on probation for another period of time, here two-and-one-half years, does not equate to an absence of guidance—statutory or otherwise—in making that decision. Accordingly, we hold that Section 31-20-5.2(B) is not void for vagueness.

## II. The District Court Did Not Abuse Its Discretion in Ordering Defendant to Remain on Probation

**{21}** Defendant contends that "there was not substantial evidence to support the [district] court's order of continued probation." Specifically, Defendant argues that the "electronic monitoring mishaps" were ultimately dismissed by the district court as "unfounded" and that continuing Defendant on probation is not justified by his statement during his PSR interview that he might reoffend if he was under stress, given his completion of sex offender counseling. Defendant further argues that the State's argument that Defendant completed part of his probationary term while in custody and thus should continue on probation out of custody for a longer period of time "doubly punishe[s him] for having to wait for halfway house space to open up." Additionally, Defendant maintains that the district court's order that Defendant remain on probation was "not based upon any articulated factual findings."

**{22}** The State responds that the district court "relied primarily on Defendant's two [probation] violations" in ordering him to remain on probation, that sufficient evidence supports those two violations, and that the district court credited Defendant's overall compliance with counseling and made the "split ruling" that Defendant need not undergo GPS monitoring during his continued probation, and thus the district court appropriately considered the evidence presented at the hearing.

**{23}**   We first decide the standard of review to apply when considering whether the district court erred in ordering Defendant to remain on probation pursuant to Section 31-20-5.2(B). We review a defendant's challenge to the terms and conditions of his probation for an abuse of discretion. *State v. Green*, 2015-NMCA-007, ¶ 9, 341 P.3d 10. Section 31-20-5.2(A) requires the district court to "conduct a hearing to determine the terms and conditions of supervised probation for [a] sex offender." Although Defendant does not challenge the terms and conditions of his probation, Defendant's challenge arises from Section 31-20-5.2(B), which requires the district court to "review the duration of the sex offender's supervised probation at two and one-half year intervals[,]" and states that "at each review hearing the state shall bear the burden of proving to a reasonable certainty that the sex offender should remain on probation." Additionally, we review sentencing for an abuse of discretion, and Section 31-20-5.2(B) is a sentencing statute. *See Lindsey*, 2017-NMCA-048, ¶ 22 (stating that sentencing is reviewed for an abuse of discretion). Given this statutory and jurisprudential context, we conclude that the applicable standard of review is abuse of discretion.

**{24}**   "To establish an abuse of discretion, it must appear the district court acted unfairly or arbitrarily, or committed manifest error." *Green*, 2015-NMCA-007, ¶ 22 (alteration, internal quotation marks, and citation omitted). "[A] district court abuses its discretion when its decision is not supported by substantial evidence." *State v. Solano*, 2009-NMCA-098, ¶ 7, 146 N.M. 831, 215 P.3d 769 (internal quotation marks and citation omitted). Here, the district court found that "[t]here were two violations," and that although "Defendant has made progress," the district court nonetheless concluded that Defendant should remain on probation for another two and one-half years, with the same terms and conditions as before but without GPS monitoring. It does not appear from the district court's ruling that it relied upon the State's arguments regarding Defendant's statement during his PSR interview that he could reoffend if under stress, or that because Defendant served part of his probation in custody, he should remain on probation longer.

**{25}**   Substantial evidence supports the district court's finding of two violations of the terms and conditions of Defendant's probation. Defendant's probation officer filed reports on two GPS violations, and Defendant does not contest the district court's finding of two violations on appeal. Although with respect to one violation, Defendant argued during the hearing that he was not aware that his GPS unit was out of contact, and with respect to the other violation, Defendant argued that he plugged in his GPS unit as soon as he was realized it was dead, Defendant does not dispute the underlying violations. Defendant's probation officer also believed Defendant would benefit from continued probation. We recognize that such might often be the case when a defendant performs well on probation, but predominately good performance while on probation cannot be held to mandate a conclusion that probation should be terminated and not continued for a longer period of time. But more to the nature of our review on appeal, the State met its burden of proof of reasonable certainty by presenting this evidence during the hearing. Given this evidence, coupled with the fact that the district court both extended probation but also eliminated GPS monitoring in recognition of Defendant's

progress, we cannot agree with Defendant that the district court abused its discretion by extending his sex offender probation for an additional period of two and one-half years.

**CONCLUSION**

**{26}**    For the foregoing reasons, we conclude that Section 31-20-5.2(B) is not unconstitutionally vague, and we affirm the district court's granting of the State's motion for Defendant to remain on probation under Section 31-20-5.2(B).

**{27}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**CYNTHIA A. FRY, Judge Pro Tempore**