The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **September 18, 2023**

**No. A-1-CA-39291 and No. A-1-CA-40043**
**(consolidated for purpose of opinion)**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JEFFREY COOLEY a/k/a JEFFREY ALLEN COOLEY,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Court Judge**

and

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ALLEN ANTONIO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant Jeffrey Cooley

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant Allen Antonio

**OPINION**

**HENDERSON, Judge.**

{1}     A sex offender whose sentence is deferred or suspended is required to serve "an indeterminate period of supervised probation" between five and twenty years. NMSA 1978, § 31-20-5.2(A) (2003). After five years on probation, and every two and one-half years going forward, a duration review hearing is held where the state has the burden of proving to a reasonable certainty that probation should continue. Section 31-20-5.2(B). If the state fails to carry its burden at the hearing, probation "may be for a period of less than twenty years," and end for the probationer. [1] *See* § 31-20-5.2(A).

{2}     In this consolidated opinion,[2] we must determine the remedy if a duration review hearing is missed, but probation is later continued based on evidence that was unavailable at the time the hearing should have been held. We hold, based on the plain language of Section 31-20-5.2(B), that duration review hearings are mandatory and must be held by the district court on the timeline provided by the statute. However, failure to hold a timely hearing does not divest the district court of jurisdiction over the case. Moreover, a late duration review hearing may satisfy a

---

[1]We refer to sex offender probationers simply as "probationers" for brevity, but clarify here that this opinion says nothing about probation for other convictions.
[2]This opinion consolidates two appeals: case Nos. A-1-CA-39291 and A-1-CA-40043. Because these cases each raise the same determinative issue, we consolidate the cases for decision. *See* Rule 12-317(B) NMRA.

probationer's right to due process, but only if it sufficiently accounts for the risk that the probationer may be erroneously continued on probation. In the cases before us, the district courts did not sufficiently address that risk, and Defendants' right to procedural due process was violated as a result. We therefore reverse and remand for a new duration review hearing for the district courts to consider additional factors, as we lay out below.

**BACKGROUND**

**I.      Defendant Jeffrey Cooley**

{3}      In September 2013, Cooley pleaded guilty to criminal sexual penetration in the third degree, contrary to NMSA 1978, Section 30-9-11(F) (2009). He was sentenced to three years' imprisonment and indeterminate parole for five to twenty years once his prison term ended. The district court suspended one year of Cooley's sentence, and accordingly imposed supervised probation for five to twenty years. One of the conditions of probation required Cooley to refrain from using alcohol and successfully complete alcohol abuse treatment.

{4}      Cooley's probation began sometime between July and November 2014. In July 2016, the State sought to revoke his probation after discovering that an adult woman had been inside Cooley's home without his probation officer's knowledge or permission. However, the State could not demonstrate at the revocation hearing that Cooley violated the conditions of his probation. Cooley successfully completed

roughly three more years of probation, until an incident in late January 2020—more than five years after he began probation—when his probation officer discovered Cooley had been drinking alcohol after receiving news of his fiancé's declining health. The State once again sought to revoke Cooley's probation. Cooley pleaded no contest, and the district court revoked, and in the same order reinstated, his probation. *See* NMSA 1978, § 31-21-15(B) (1989, amended 2016) (stating that if a probation violation is established, the district court "may continue the original probation . . ."). At this point, Cooley had been satisfactorily discharged from his parole supervision since July 2019.

{5}     Four months later, Cooley crashed his vehicle after driving while intoxicated. Cooley had been grieving the death of his fiancé at the time, according to his probation officer. The State requested that probation be revoked, but this time, Cooley filed a motion to dismiss in response. He noted that he had been on probation for more than five years, and, according to Cooley, the district court's failure to hold a duration review hearing mandated by Section 31-20-5.2(B) resulted in his successful completion of probation, so the district court had no jurisdiction over him. As a result, he argued that revoking any probation would violate his right to due process under the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution.

3

**{6}** After a hearing, the district court denied Cooley's motion, and revoked and reinstated his probation. This time, the district court imposed additional requirements that Cooley be screened for "intense outpatient treatment" and participate in four Alcoholics Anonymous (AA) meetings each week for the next ninety days, all subject to adjustment based on the screening results. In its order denying Cooley's motion to dismiss, the district court found that Cooley had been on probation for nearly six years without a duration review hearing. However, it concluded that Section 31-20-5.2(B) did not divest the court of jurisdiction or require it to end Cooley's probation. Instead, the district court determined that the appropriate course of action was to require the State to file a petition for a review hearing. Cooley's appeal followed, but while his appeal was pending the State requested a duration review hearing.

**{7}** Before the district court had acted on the State's request, the State once again asked that Cooley's probation be revoked, this time because he had driven with a revoked license. The State later voluntarily withdrew its motion to revoke probation in exchange for Cooley's guilty plea to driving while under the influence. The State made two more requests for a duration review hearing before the district court finally held the hearing on October 7, 2021—approximately six years and eleven months after Cooley began probation, at least.

4

**{8}** At the hearing, Cooley testified to his continued efforts to comply with the terms of his probation, while also acknowledging his alcohol use and grief over his fiancé's death. Cooley's probation officer testified that Cooley was "very communicative" with her and had not committed another sexual offense, but she was concerned that his alcohol use could cause him to reoffend. Based on the testimony at the hearing, and the record in the case, the district court concluded that the State met its burden of proving to a reasonable certainty that Cooley's probation should continue. The district court relied on the fact that the offense for which Cooley was convicted involved alcohol use, and that all of the recent offenses involved alcohol. Cooley was accordingly ordered to continue to abide by the conditions of his probation.

## II.   Defendant Allen Antonio

**{9}** In July 2015, Antonio pleaded no contest to criminal sexual penetration in the third degree, contrary to Section 30-9-11(F). He was sentenced to three years' imprisonment and indeterminate parole for five to twenty years once his prison term ended. Two years of Antonio's sentence was suspended, resulting in supervised probation for five to twenty years. Antonio began his probation on December 25, 2015.

**{10}** Five years elapsed without any evidence of probation violations or attempts by the State to revoke Antonio's probation. On December 30, 2020, five years and

five days after Antonio began probation, the State requested a duration review hearing seeking to continue his probation. Before the district court held a hearing, however, in February 2021, Antonio's probation officer alleged that he had violated the conditions of probation by failing to disclose his sexual relationships and continued use of dating websites. Soon after, the State moved to revoke Antonio's probation. Several circumstances caused the revocation hearing to be delayed twice. First, Antonio was required to quarantine after falling ill with COVID-19, and second, the parties agreed to continue the hearing pending Antonio's parole review hearing in front of the parole board. In April 2021, without ever having a revocation hearing, Antonio admitted that he failed to report his use of dating websites as part of an agreement with the State. The district court revoked, but reinstated Antonio's probation.

{11} The district court finally held a hearing on the State's motion to continue Antonio's probation in May 2021. But at this point Antonio was in custody, and for some reason was not given notice of the hearing, so the New Mexico Department of Corrections did not make him available. Moreover, his defense counsel asked that the hearing be reset so that Antonio could file a response to the State's motion to continue. The hearing was rescheduled, and soon after Antonio filed his response. He argued that Section 31-20-5.2(B) mandated a duration review hearing once he had completed five years of probation, and having not been given one, the district

court was deprived of jurisdiction to make any further decisions regarding his probation. According to Antonio, the failure to timely hold such a hearing also deprived him of his right to due process under the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution.

{12}     Yet more delay plagued the district court's efforts to hold a duration review hearing. The hearing had to again be rescheduled, three times, because defense counsel once failed to appear and Antonio continued to be unavailable due to his incarceration. Finally, in September 2021—five years and eight months after Antonio's probation began—the district court held a duration review hearing.

{13}     The district court began by taking testimony concerning Antonio's conduct while on probation. That testimony consisted entirely of Antonio's probation officer reiterating the probation violations that were subject to the State's motion to revoke. Based on this testimony, the district court concluded that the State met its burden of proving to a reasonable certainty that probation should be continued. Of particular concern was the fact that Antonio's probation violation related to sexual activity, a core component of his underlying conviction. Regarding Antonio's arguments about Section 31-20-5.2(B), the district court read the statute to mean that "the default is the person is on that probation . . . unless and until the court makes a determination that [the State's burden] has not been met." This ruling was couched by a general

7

concern from the district court over the lack of rules governing duration review hearings, and how "there really is no procedure in place for these [hearings] to be put on the court's radar." The district court noted that the issue "certainly is ripe for appeal." Antonio's appeal followed.

**DISCUSSION**

{14}     Defendants make the following arguments in favor of reversal: (1) Section 31-20-5.2(B) is void for vagueness; (2) the statute creates mandatory jurisdictional timelines that were not met; (3) timely duration review hearings are a component of procedural due process, and failing to hold them violates that right; (4) continuing probation without a duration review hearing violated their right to be free from double jeopardy; (5) the State failed to present sufficient evidence to continue probation; and (6) incarceration may not be imposed as a sanction for a probation violation if the length of the suspended sentence has already been served on probation. Ultimately, we disagree that Section 31-20-5.2(B) is void for vagueness. We agree that the statute calls for mandatory duration review hearings, but the district court was not deprived of jurisdiction over Defendants' probation simply by failing to hold the hearing on time. However, we conclude that Defendants were deprived of their right to procedural due process by being continued on probation after late duration review hearings, at which the district courts did not assess the risk

8

that the delayed hearings erroneously deprived Defendants of their liberty interests. Because we reverse on that ground, we do not address Defendants' other arguments.

## I.    Void for Vagueness

**{15}**    As a threshold issue, we must address whether Section 31-20-5.2(B) is unconstitutionally vague as raised by Antonio. Section 31-20-5.2(B) states,

> A district court shall review the terms and conditions of a sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, the district court shall also review the duration of the sex offender's supervised probation at two and one-half year intervals. When a sex offender has served the initial five years of supervised probation, at each review hearing the state shall bear the burden of proving to a reasonable certainty that the sex offender should remain on probation.

Antonio asserts that the section, as a whole, is void for vagueness because it fails to clarify for a probationer whether they must continue to comply with the terms of their probation after five years absent a timely duration review hearing, and it provides no procedures for the district courts to hold duration review hearings, encouraging subjective and ad hoc application. The State responds by arguing that we have already rejected a vagueness challenge to this statute in *State v. Chavez*, 2019-NMCA-068, 451 P.3d 115, and that the language of the statute makes it clear whether a probationer must still comply and how it should operate.

**{16}**    Although neither Defendant made a vagueness challenge to the district court, we still review the issue on appeal. *See id.* ¶ 11. A vagueness challenge to a statute is "based on the principle of fair notice in that no one may be held criminally

9

responsible and subject to criminal sanctions for conduct without fair warning as to the nature of the proscribed activity." *State v. Duttle*, 2017-NMCA-001, ¶ 12, 387 P.3d 885 (internal quotation marks and citation omitted). A statute is unconstitutionally vague when "persons of common intelligence must necessarily guess at its meaning." *Id.* (internal quotation marks and citation omitted). In *Chavez*, this Court explained the due process underpinnings of a vagueness challenge that require a defendant to overcome the "strong presumption of constitutionality" of a statute by showing unconstitutionality "beyond all reasonable doubt." 2019-NMCA-068, ¶ 9 (internal quotation marks and citation omitted). A defendant can meet this burden by either demonstrating that (1) "the statute fails to allow individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited," or (2) the statute is arbitrarily or discriminatorily enforced "because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and ad hoc application." *Id.* (internal quotation marks and citation omitted). Antonio argues that Section 31-20-5.2(B) suffers from both defects.

{17} We must construe Section 31-20-5.2(B) "in such a manner that it is not void for vagueness if a reasonable and practical construction can be given to its language." *See Chavez*, 2019-NMCA-068, ¶ 10 (internal quotation marks and citation omitted). Because this task involves statutory construction, we review the issue de novo. *Id.* "Our ultimate goal in statutory construction is to ascertain and

10

give effect to the intent of the Legislature." *Id.* (internal quotation marks and citation omitted). We start by looking at the statute's plain language—if the meaning of that language is clear and unambiguous we give effect to that meaning. *See id.* We do not view a statute's language in isolation, but rather as a whole along with other statutes on the same subject matter. *Id.*

{18} We reject the State's assertion that we have already addressed this issue before. *Chavez* indeed involved a vagueness challenge to Section 31-20-5.2(B), but the challenged portion of the statute was the state's burden to show to a "reasonable certainty" that a probationer "should remain on probation." 2019-NMCA-068, ¶ 12 (internal quotation marks omitted). Here, the issues concern the procedure for holding duration review hearings, when they must be held, and a probationer's expectations if they are not timely held. These issues are separate from the burden the state has once the district court actually holds such a hearing.

{19} While the defendant in *Chavez* challenged particular language in the statute, the challenge here is more about what is missing. Rather than any term in Section 31-20-5.2(B) being "so vague that persons of common intelligence must necessarily guess at its meaning," Antonio asserts that the statute as a whole simply is not detailed enough. *See Duttle*, 2017-NMCA-001, ¶ 12 (internal quotation marks and citation omitted). Antonio first posits that the statute is unclear because the burden to prove that a probationer must continue probation shifts to the State after five years,

11

but the consequences of missing the hearing where the State is held to that burden is unanswered in Section 31-20-5.2(B). Without a timely request to continue probation, Antonio asserts it would be reasonable to assume the default is that a probationer's term ends. However, this assertion is unsupported because the probationer's term is articulated when the entire statute is given a reasonable construction based on its plain language.

{20} While Section 31-20-5.2(B) mandates duration review hearings, it is Section 31-20-5.2(A) that governs the term of a probationer's sentence. It provides that a sex offender whose sentence is deferred or suspended is required to "serve an indeterminate period of supervised probation for a period of not less than five years and not in excess of twenty years." Section 31-20-5.2(A). This term of probation is "indeterminate" in that the probationer cannot be given a definite sentence of eleven years, for example. Section 31-20-5.2(A); *Indeterminate*, *Black's Law Dictionary* (11th ed. 2019) ("Not definite, distinct, or precise."); *cf.* NMSA 1978, § 31-20-5(A) (2003) (providing that when a non-sex offender defendant is to be placed on probation, it is "for all or some portion of the period of deferment or suspension" of their sentence, not to exceed five years). Rather, the sentence must be between five and twenty years, and the sentence can only end earlier than twenty years if "at a review hearing . . ., the state is unable to prove that the sex offender should remain on probation." Section 31-20-5.2(A). In other words, a probationer's term can only

12

be less than twenty years if the state fails to meet its burden *at a review hearing*. This language indicates an intent by the Legislature for a review hearing to be held before a probationer's term can end early, irrespective of the burden shifting provision in Section 31-20-5.2(B). Thus, until such a review hearing is held, so long as the term has not lasted twenty years, the statute allows an individual of ordinary intelligence to determine that the probationer is still on probation. As a result, Section 31-20-5.2 is not unconstitutionally vague in this regard. *See Chavez*, 2019-NMCA-068, ¶ 9.

{21} Antonio's second argument is similarly unavailing. He asserts that Section 31-20-5.2(B) "does not create guidelines for its application," resulting in different district courts in New Mexico applying the language differently. He suggests examples of different ways courts "might" apply the statute, focusing entirely on the time when courts could determine duration review hearings should take place. Antonio imagines scenarios where one district court concludes that while a duration review hearing is necessary, timeliness is not, while another district court disagrees, concluding that hearings must be timely, but even that court might think "timely" is any time within two and one-half years after five years of probation is served. Based on the language of Section 31-20-5.2(B), these differing interpretations are not permitted, let alone encouraged. *See Chavez*, 2019-NMCA-068, ¶¶ 9, 18.

13

{22} Statutes are routinely written with broad language to encompass a wide variety of circumstances, and a practical, reasonable construction of Section 31-20-5.2(B) assuages any fears that it will be enforced in the arbitrary or discriminatory manner Antonio suggests. Indeed, the two different New Mexico district courts in these cases, one in Bernalillo County and the other in Lincoln County, interpreted the statute in a similar manner. Both concluded that Section 31-20-5.2(B) mandated duration review hearings every two and one-half years starting at five years and that probation continued unless the State failed to meet its burden at the hearing. This conclusion makes sense based on a plain reading of the statute. It requires a terms and conditions review every two and one-half year intervals once probation begins— at the first review, the district court "shall review the terms and conditions" of the probation, and at the second review and every review that happens after, "the district court shall also review the duration" of the probation. Section 31-20-5.2(B). This language refutes Antonio's contention that a district court may determine that "review hearings are not subject to any time requirements." *See State v. Gutierrez*, 2023-NMSC-002, ¶ 22, 523 P.3d 560 ("The principal command of statutory construction is that the court should determine and effectuate the intent of the Legislature, using the plain language of the statute as the primary indicator of legislative intent." (alteration, internal quotation marks, and citation omitted)). It also clarifies any confusion about when the hearings must be held, because the

14

statute mandates terms and conditions review hearings "at two and one-half year intervals." Section 31-20-5.2(B). For example, the State argues that a probationer's first duration review hearing is timely if it is held "up to two and one-half years after the expiration of the first five years" of probation. But this interpretation is unsupported, because that would require the district court to review the terms and conditions of probation—something that must happen at five years—without also reviewing duration of probation after five years, contrary to the clear language of the statute.

{23}     The foregoing demonstrates that a reasonable construction is possible based on the plain language of Section 31-20-5.2(B), and thus the statute is not unconstitutionally vague. The statute articulates when a probationer can expect to be on probation, and must abide by the conditions of probation. The statute further articulates adequate guidelines for its application such that district courts can uniformly understand what is required and when.[3] For those reasons, we reject

---

[3]This is not to say that district courts, the State, and probationers would not benefit from additional rules or regulations implementing the statute. Of particular concern is whose responsibility it is to ensure that duration review hearings are scheduled and held on time. Indeed, the district court in Antonio's case expressed this very concern. Although these cases do not require us to answer that question, they highlight how easily a probationer can be denied timely duration review hearings. We note that the New Mexico Parole Board has promulgated regulations relating to hearings owed to a parolee, such as duration review hearings under NMSA 1978, Section 31-21-10.1(C) (2007), and that the Rules of Criminal Procedure provide substantial guidance to the district courts and the state on addressing probation violations. *See* 22.510.2.8 NMAC; *see also* Rule 5-805

Antonio's vagueness challenge and move on to address the failure of the district courts in these cases to adhere to the deadlines in Section 31-20-5.2(B).

**II.     Section 31-20-5.2(B) Deadlines**

{24}     Defendants both contend that duration review hearings under Section 31-20-5.2(B) are mandatory and that the failure to hold timely duration review hearings required their probationary period to end because the district courts were deprived of jurisdiction over them. We begin by discussing whether the hearing deadlines are mandatory. Concluding that they are, we hold nonetheless that failing to conduct timely duration review hearings does not deprive the district court of jurisdiction over a probationer.

**A.     Mandatory Deadlines**

{25}     Not all statutory deadlines are mandatory. *See, e.g.*, *Rodarte v. N.M. Tax'n & Revenue Dep't*, 1995-NMCA-078, ¶¶ 5, 9, 120 N.M. 229, 900 P.2d 978 (holding that the thirty-day deadline to hold driver's license revocation hearings under NMSA 1978, Section 66-8-112(B) (1993, amended 2015) was "directory," not mandatory). To determine if the hearing deadlines in Section 31-20-5.2(B) are mandatory, we continue to engage in statutory construction and construe the statute to effectuate the Legislature's intent. *See N.M. Dep't of Health v. Compton*, 2001-NMSC-032, ¶ 18,

---

NMRA. These appeals demonstrate the need for additional rules or regulations to prevent due process violations in the future.

131 N.M. 204, 34 P.3d 593. Section 31-20-5.2(B) creates a scheme for periodic monitoring of a sex offender who is placed on an indeterminate period of probation of five to twenty years. As we have explained, to balance the indeterminate nature of the probation, once the sex offender has been on probation for five years "the district court *shall* also review the duration of the sex offender's supervised probation at two and one-half year intervals." Section 31-20-5.2(B) (emphasis added). These periodic reviews, coupled with the fact that sex offenders are placed on an indeterminate probation, reflect the Legislature's efforts to ensure that sex offenders are closely monitored as they attempt to reintegrate into the community. Section 31-20-5.2(B) gives the district court an active role in overseeing a sex offender's progress on probation, in contrast to only reviewing a probationer's case when a violation has been alleged. *Compare* § 31-20-5(A) (which does not require periodic reviews of non-sex offender probation), *with* § 31-20-5.2(B); *see also* NMSA 1978, § 31-21-15 (2016) (providing procedures for addressing probation violations). Section 31-20-5.2(B) balances the probationer's indeterminate and potentially decades-long period of probation by requiring the state to prove to a reasonable certainty that probation should continue beyond five years, so as to monitor the sex offender's rehabilitation and determine whether "the sex offender should remain on probation." *See* § 31-20-5.2(B); *McCutcheon v. Cox*, 1962-NMSC-175, ¶ 12, 71 N.M. 274, 377 P.2d 683 (recognizing that the principles

17

supporting indeterminate sentences "advocate a break from the definite and fixed sentence in favor of an indeterminate period of punishment which would be proportioned to the progress of the prisoner toward rehabilitation"). These goals would be frustrated if the timeline for the hearings by which the district court can review the duration of a sex offender's probation is not mandatory. *See State v. Young*, 2004-NMSC-015, ¶¶ 26-27, 135 N.M. 458, 90 P.3d 477 (refusing to recognize a statutory interpretation that would frustrate the legislative purpose of maintaining public order). If it was otherwise, and the timeline was merely directory, a district court could potentially neither closely monitor a sex offender's probation, nor ensure that the state meets its burden to establish that the probationer should remain on probation.

{26}     Moreover, Section 31-20-5.2(B) repeatedly states that a district court "shall" hold review hearings at the times called for by the statute. This Court generally construes the Legislature's use of "shall" in a statute as a mandatory obligation in most circumstances. NMSA 1978, § 12-2A-4(A) (1997); *State v. Jody C.*, 1991-NMCA-097, ¶ 9, 113 N.M. 80, 823 P.2d 322. We see nothing indicating a contrary intent here. Given the purpose behind Section 31-20-5.2 and its clear and unambiguous language, Section 31-20-5.2(B) duration review hearings must be held on the timeline provided by the statute.

**B.      Jurisdiction**

{27}      The next question is whether the failure to meet the deadline in Section 31-20-5.2(B) to hold a duration review hearing requires dismissal because the district court was deprived of its jurisdiction. Once again, we look to Legislative intent when determining if failure to meet statutory deadlines deprives a court of jurisdiction. *See N.M. Dep't of Health v. Compton*, 2000-NMCA-078, ¶ 16, 129 N.M. 474, 10 P.3d 153, *aff'd*, 2001-NMSC-032, ¶ 33, 131 N.M. 204, 34 P.3d 593. "A court's lack of jurisdiction means an entire lack of power to hear or determine the case and the absence of authority over the subject matter or the parties." *Id.* ¶ 15 (internal quotation marks and citation omitted). Mandatory statutory requirements will prevent a court from having jurisdiction when those requirements are "essential to the proper operation of the statute." *Id.* ¶ 13. In *Compton*, for instance, the defendant argued that NMSA 1978, Section 43-1-11(A) (1989, amended 2009) mandated a hearing after seven days of involuntary civil commitment. *Compton*, 2000-NMCA-078, ¶¶ 8-9. This Court, and our Supreme Court, agreed, but concluded that the failure to hold such a hearing did not deprive the district court of jurisdiction because the statute did not affect "the essential power of the district court to adjudicate the issue before it." *Id.* ¶ 15; *Compton*, 2001-NMSC-032, ¶ 18 n.3. This conclusion was supported by the fact that Section 43-1-11(A) did not create a "threshold or

prerequisite" to jurisdiction and that the hearing could be waived. *Compton*, 2000-NMCA-078, ¶¶ 15-16 (internal quotation marks and citation omitted).

{28}     Defendants contend that whether a statute is jurisdictional "depends on if the [L]egislature has provided for waiver or extension for good cause." For support they rely on both *Compton* opinions and other cases where waiver was a relevant consideration. *See State v. Kerby*, 2007-NMSC-014, 141 N.M. 413, 156 P.3d 704; *Lopez v. N.M. Bd. of Med. Exam'rs*, 1988-NMSC-039, 107 N.M. 145, 754 P.2d 522; *N.M. Tax'n & Revenue Dep't v. Bargas*, 2000-NMCA-103, 129 N.M. 800, 14 P.3d 538; *Stephens v. N.M. Transp. Dep't*, 1987-NMCA-095, 106 N.M. 198, 740 P.2d 1182; *Redman v. Bd. of Regents of N.M. Sch. for Visually Handicapped*, 1984-NMCA-117, 102 N.M. 234, 693 P.2d 1266. We agree with Defendants that Section 31-20-5.2(B) is silent on a probationer's ability to waive a duration review hearing or extend the deadline to hold one. However, whether a defendant can waive a hearing is only "evidence that the [L]egislature did not intend a jurisdictional requirement in the sense that the right to a timely hearing could not be waived," rather than a conclusive determiner that the district court's jurisdiction over the parties has been terminated. *Compton*, 2000-NMCA-078, ¶ 16 (internal quotation marks and citation omitted).

{29}     This is a case where the statute at issue does not create a threshold or prerequisite to a district court's jurisdiction over the defendant. As we have

20

discussed, when looking at the statute as a whole, the Legislature expressly conferred jurisdiction to the district court for an "indeterminate period" of five to twenty years. Section 31-20-5.2(A). The period may be for fewer than twenty years, but only if the state fails to meet its burden at a duration review hearing. *See id.* This indicates that, even if a deadline is missed, the district court must still hold a hearing and hold the state to its burden before a probationer's term may end early. It would only be in the opposite scenario—that the probationer's term ends early by default—that the district court would be deprived of jurisdiction. *See State v. Godkin*, 2015-NMCA-114, ¶ 15, 362 P.3d 161 ("When a defendant's probation term ends without being revoked, the defendant is relieved of any obligations imposed by the court and has completely satisfied all criminal liability for the crime."). Construing Section 31-20-5.2(A) in such a way would be untenable. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 21, 309 P.3d 1047 ("We will not construe a statute to defeat its intended purpose." (alteration, internal quotation marks, and citation omitted)). Accordingly, failure to hold a timely duration review hearing does not deprive the district court of jurisdiction to later continue a defendant on probation.

## III.    Procedural Due Process

{30}    Even though the deadlines to hold duration review hearings are not jurisdictional, a probationer cannot be forced to endure twenty years of probation without the state ever meeting its burden. We have recognized in this opinion that

dismissal by default is inappropriate. However, Defendants additionally contend that the late hearings at issue in these appeals violated due process protections. We agree that a probationer's right to due process requires a duration review hearing within a reasonable time, and a balancing of individual and governmental interests demonstrates how a late duration review hearing could still protect that right. *See Morrissey v. Brewer*, 408 U.S. 471, 488 (1972) (setting forth the requirements to satisfy due process for parole revocation hearings including that a "hearing must be tendered within a reasonable time"); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (reiterating that the revocation of parole is a "loss of liberty" that "is a serious deprivation requiring that the parolee be accorded due process" and extending that analysis to probationers). We explain.

{31}     The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481. Those procedural protections "impose[] constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Accordingly, determining what procedural due process is owed in a given circumstance depends on the liberty or property interest at stake and

22

whether it has been interfered with by the state. *See State v. Druktenis*, 2004-NMCA-032, ¶ 47, 135 N.M. 223, 86 P.3d 1050; *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 21, 118 N.M. 470, 882 P.2d 511. If there is a protected interest that has been deprived by the state, answering whether procedural due process was provided requires us to balance that interest against the state's interests as guided by the factors in *Mathews*. *See Druktenis*, 2004-NMCA-032, ¶ 47. Under *Mathews*, we consider the following:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

## A.    Defendants' Liberty Interest

{32}    All parties before us agree that, in general, probationers only enjoy conditional liberty subject to the terms and conditions of their probation. *See State v. Guthrie*, 2011-NMSC-014, ¶ 10, 150 N.M. 84, 257 P.3d 904. However, during oral argument the parties split on whether the precise interest in these cases is being free from the conditions of probation or simply having a duration review hearing in the first place. If the latter were correct, then Defendants could not demonstrate that they were deprived of any protected interest since they both received duration review hearings,

23

albeit late. To help resolve the dispute, it is helpful to survey the interests of probationers in general compared to those created by virtue of Section 31-20-5.2(B). *See Cordova v. Lemaster*, 2004-NMSC-026, ¶ 18, 136 N.M. 217, 96 P.3d 778 (recognizing that state law may give rise to a protected liberty interest); *Garcia v. Las Vegas Med. Ctr.*, 1991-NMCA-053, ¶ 16, 112 N.M. 441, 816 P.2d 510 (noting that statutes "may be relevant in identifying a state-created liberty interest or the circumstances that can overcome that interest").

{33} Probation is an alternative to incarceration. *See, e.g.*, § 31-20-5.2(A); § 31-20-5(A). But it is nonetheless a criminal sanction which may result in numerous restrictions on any probationer's freedoms. *See State v. Leon*, 2013-NMCA-011, ¶ 21, 292 P.3d 493; *State v. Ponce*, 2004-NMCA-137, ¶ 8, 136 N.M. 614, 103 P.3d 54 (permitting the sentencing court to "impose conditions that have as their objective the deterrence of further misconduct" so as to "effectuate a probationer's rehabilitation"); *see also* § 31-20-5.2(C) (providing that a district court may impose conditions on probationers, such as abstaining from alcohol or drugs and having no contact with individuals or groups). Probationers accordingly do not have "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Morrissey*, 408 U.S. at 480; *see Gagnon*, 411 U.S. at 782 (applying *Morrissey* in the probation context). Given the diminished liberty interest at stake, the state may constitutionally

24

deprive probationers of that interest with less process than may be owed to law-abiding citizens. *See, e.g.*, *Gagnon*, 411 U.S. at 786 (describing the minimum requirements owed to probationers in revocation proceedings); *Guthrie*, 2011-NMSC-014, ¶¶ 33-41 (delineating principles to determine whether a probationer had a due process right to confront witnesses in revocation proceedings); *State v. Vigil*, 1982-NMCA-058, ¶ 16, 97 N.M. 749, 643 P.2d 618 (noting that revocation proceedings are not part of a criminal prosecution and more akin to an administrative proceeding in which "strict observance of technical rules of law and procedure is not required" (alteration, internal quotation marks, and citation omitted)).

{34} New Mexico has provided sex offender probationers like Defendants an opportunity by statute to have the restrictions on their liberty removed. Section 31-20-5.2(B) mandates an indefinite and long period of probation but entitles a probationer to have their probation end if the state fails to carry its burden, relieving that probationer entirely from the conditions on their liberty described above. Contrast this with revocation proceedings, where the probationer may remain on probation, thus retaining only their conditional liberty, or their probation may be revoked, thus losing only their conditional liberty. In these proceedings, the probationer has no opportunity to attain complete liberty. The same stakes do not exist at probation revocation hearings and at duration review hearings under Section 31-20-5.2(B). Rather, Section 31-20-5.2(B) provides a mandatory opportunity for a

probationer to restore their freedoms by being released from probation. The statute does so by creating a right to be released, starting at five years and at two and one-half year increments thereafter, unless the state can prove to a reasonable certainty that probation must continue. *See id.* By creating the right to be released from probation, the state has generated a liberty interest, and the duration review hearing, rather than being the right itself, is the procedure by which the right is enforced; it is the mechanism by which the probationer's liberty interest in release is safeguarded. When framed in this manner, a probationer has a liberty interest, created by Section 31-20-5.2(B), in being free from the conditions of sex offender probation.

{35}     Although this distinction is subtle, we have made it before in the context of involuntary civil commitment. In *Garcia* the plaintiff claimed that his right to due process was violated after being involuntarily detained in a hospital without a timely hearing. *See* 1991-NMCA-053, ¶¶ 3-5, 19. This Court recognized that the statute governing involuntary commitments of adults at the time created a right to a hearing within seven days of commitment unless otherwise waived. *See id.* ¶ 4; § 43-1-11(A). At the hearing, a district court could extend the term of commitment if it found by clear and convincing evidence that certain conditions in the statute were met. *Garcia*, 1991-NMCA-053, ¶ 19. In evaluating the liberty interest at stake, this Court held that the "substantive right" protected by state law was freedom from commitment absent those conditions. *Id.* ¶ 20. In other words, even though the

plaintiff had a right to a hearing after seven days, the liberty interest involved related to the substance of that hearing and the possibility of further extending his involuntary commitment. *See id.*; *accord Compton*, 2001-NMSC-032, ¶ 12 (recognizing "the severe curtailment of liberty which involuntary commitment in a mental institution can entail" (internal quotation marks and citation omitted)). Our analysis here comes to the same conclusion: a probationer's liberty interest is in being released from probation unless the state proves to a reasonable certainty that probation must continue, rather than in the hearing itself. That interest is significant considering the curtailment on personal liberty imposed by conditions of probation.

**B.      Risk of Erroneous Deprivation and Benefit of Additional Procedures**

{36}      With respect to the second *Mathews* factor, a probationer's liberty interest is protected under Section 31-20-5.2(B) by creating a right to a duration review hearing five years into probation and periodically thereafter. Failure to have the hearing when mandated deprives a probationer of their liberty interest by requiring them to continue on probation longer than the statute permits without the state meeting its burden of showing a longer period is necessary. The question to be answered under this factor is whether the procedures used in the cases before us increased the risk that Defendants were *erroneously* continued on probation because of the late duration review hearing. After assessing the risk of an erroneous deprivation, we

27

must then consider whether substitute or additional procedures exist, which can feasibly reduce that risk.

**1.      Risk Posed by the Procedures Used**

{37}      Neither Defendant had a duration review hearing on time. We note that, in practice, there is no doubt the reality of our justice system will lead to delays and a probationer may not receive a duration review hearing precisely when required—such was the case with Antonio, for instance, whose review hearing was consistently delayed for reasons beyond his control. Delays may also be more common in this context because a probationer is typically without counsel until the district court sets the duration review hearing. *See* § 31-20-5.2(D) (requiring the district court to notify a probationer's counsel of record about an upcoming probation hearing). It seems unlikely to us that even in the most scrupulous case duration review hearings will be held precisely when required.

{38}      Defendants suggest that this should be the end of our inquiry. However, the fact that a probationer does not receive a duration review hearing exactly on the expiration of the first five years—the deadline in Section 31-20-5.2(B)—does not inherently entail an erroneous deprivation of their liberty interest. In certain circumstances, a hearing after a right has been deprived may comport with minimum standards of due process. *See Harrell*, 1994-NMSC-096, ¶ 25; *see, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that due process was not violated by a

"random and unauthorized" deprivation of a prisoner's property by a prison official because the state provided an adequate post-deprivation hearing). Post-deprivation hearings can, at times, sufficiently mitigate whatever risk of error may be caused by delaying proceedings. *See Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("The Due Process Clause simply does not mandate that all governmental decision[-]making comply with standards that assure perfect, error-free determinations."); *cf. N.M. Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 28, 363 P.3d 1176 (determining that the "risk of erroneous deprivation of unemployment benefits" was not "unnecessarily high" during the appeals process). Defendants have provided us with no reason why the same principle does not apply to duration review hearings under Section 31-20-5.2(B). Indeed, "[i]n examining the potential risk of erroneous deprivation, we look to the procedures as a whole." *Garduño*, 2016-NMSC-002, ¶ 21. We must therefore consider the impact of the late duration review hearings Defendants received to accurately determine the risk of erroneously continuing their probation.

{39} Both Defendants were on probation significantly longer than contemplated by Section 31-20-5.2(B) before they finally received a duration review hearing. Such delay, by itself, can inform the risk of error caused by post-deprivation proceedings. *See Mackey*, 443 U.S. at 14-15. And in the cases before us, that delay was lengthy, especially when considering the strict conditions and supervision to which

29

probationers are required to adhere and submit. For Cooley, he waited nearly two years, at least, before he had a duration review hearing; for Antonio, it was an additional eight months. Every additional day on probation required both Defendants to continue to abide by over twenty five conditions imposed on them, including strict reporting to their probation officers and restrictions on movement and association without their probation officers' prior permission.

{40}    Furthermore, neither Antonio nor Cooley asked for the delay, and they garnered no apparent benefit from it. To the contrary, when violations occurred after the five-year mark, both Defendants were faced with having their probation revoked, which could have led to sanctions like prison time or additional conditions for their release. *See* § 31-20-5.2(E) (permitting revocation as a consequence of probation violations). Indeed, for Cooley, one of his violations led to even stricter conditions that mandated periodic AA meetings and screening for intense outpatient treatment.

{41}    Defendants' post-five-year violations were also central to both district courts' determinations that their probation should continue when they finally did have their review hearings. It is undisputed that there would be no evidence of probation violations had the district courts held timely duration review hearings. The only evidence of misbehavior during probation existed after Defendants had been on probation for over five years, but the district courts relied almost exclusively on that evidence in concluding that their probation needed to continue beyond five years. If

30

both Defendants had a timely duration review hearing they may not have been on probation at the time of the violations, and the conduct may not have amounted to probation violations because it would either yet to have occurred or be known to the State.

{42} Taken together, the late duration review hearings increased the risk that Defendants were erroneously continued on probation. The delay increased the likelihood that Defendants would violate probation, permitted reliance on evidence of violations that would have been unavailable at a timely duration review hearing, and undercut the very real possibility that Defendants would have been released after five years of probation.

**2. Benefit of Additional Procedures in Duration Review Hearings**

{43} All parties before us have stuck with their preferred extremes when addressing the benefit of additional procedures under these circumstances. Defendants maintain that no hearing except one by the statutory deadline can satisfy due process. The State, for its part, suggests that a late duration review hearing cannot cause or result in any prejudice, because in the State's words, Defendants were "merely continued on probation." Defendants' position lends too little credence to the Legislature's preference for an indeterminate period of probation, and the State's argument affords too little weight to Defendants' liberty interest.

31

{44} It is evident that a district court has the ability to mitigate any risk of erroneously continuing probation even at a late duration review hearing. Section 31-20-5.2(B) requires the state to prove to a reasonable certainty that probation should continue. The district court has substantial discretion in determining whether the state has met its burden. *See Chavez*, 2019-NMCA-068, ¶ 20. That discretion is guided by a number of nonexhaustive factors, including the nature and circumstances of any sexual offenses, rehabilitation efforts, danger to the community, and a risk and needs assessment. *Id.* ¶ 16. Any other "relevant factors" may be considered as well, Section 31-20-5.2(A), which necessarily includes any delay in holding a duration review hearing.

{45} Based on our discussion, the risk of erroneously continuing probation at a late review hearing stems from at least three circumstances. First is the delay. Delay increases the time a probationer must abide by the terms and conditions of their probation, allowing the state to impose strict requirements over the probationer that may no longer be warranted. This may lead to probation violations, which would otherwise have been legal activity. Second is the reason for the delay. A probationer may have legitimate reasons for delaying a duration review hearing to their benefit, such as needing additional time to prepare a defense or secure witnesses. In those instances the risk of erroneously continuing probation at a late review hearing is significantly diminished. However, absent delays sought by a probationer, there are

few legitimate reasons for the state to postpone the hearing in which it must prove that probation should continue. Third is the missed opportunity. The state may be better situated to meet its burden at a late duration review hearing than one that takes place on time, depriving a probationer of their original chance of being released from probation. The obvious example presented by the cases before us is evidence of probation violations that would not have been available at a timely duration review hearing.

{46} These circumstances are relevant factors for the district courts to consider when determining whether the state has met its burden of proving that probation should continue. Essentially, each of them relate to a probationer's likelihood of being released from probation but for the delay. That likelihood directly relates to the state's burden at a duration review hearing, and so the circumstances affecting that likelihood are appropriate considerations for the district courts under Section 31-20-5.2(A). In recognizing and evaluating the delay, cause of the delay, and missed opportunity, the district courts can adequately mitigate the risk posed by a late duration review hearing to ensure that a probationer receives due process, even if its ultimate conclusion is that probation must continue.

{47} We recognize that inherent in assessing the probable value of additional procedural safeguards is the degree of prejudice that arises from their absence. *Cf. State v. Neal*, 2007-NMCA-086, ¶ 42, 142 N.M. 487, 167 P.3d 935 (requiring a

33

defendant to show prejudice as a result of a denial of his due process right to cross-examine a witness at revocation proceedings). Here, while both district courts recognized the delay in holding Defendants' duration review hearings, neither court considered whether the delay impaired their ability to defend against the State's contention that their probation should continue. Also, in both cases the only evidence of probation violations—the predominate consideration for both district courts continuing probation—was only uncovered after Defendants' duration review hearings should have been held. The lengthy delay, lack of anything justifying it, and the reliance on otherwise unavailable evidence all served to undermine the likelihood that either Defendant would have been released from probation.

{48}     The State argues neither Antonio nor Cooley can demonstrate that they would have been successful even at a timely duration review hearing or any particularized prejudice resulting from the delay. In other words, the district courts may have required Defendants to continue on probation after a timely duration review hearing, so the delay in their hearings made no difference. In light of Defendants' liberty interest and the mandatory statutory language, we are unpersuaded. Neither record presents any evidence that the district courts considered the delay in the hearing in any fashion when evaluating whether the State met its burden to demonstrate that Defendants should remain on probation. Moreover, in assessing the *Mathews* factors we do not require absolute certainty; instead, we ask whether "there is a reasonable

likelihood that the outcome *might* have been different" had additional procedures been used. *See Garduño*, 2016-NMSC-002, ¶ 29 (internal quotation marks and citation omitted); *State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶ 37 n.2, 136 N.M. 53, 94 P.3d 796 ("In this regard, our analysis is different from a harmless error analysis which is an outcome-based search for actual prejudice, rather than an interest analysis under *Mathews* that looks to whether the error produced an unjustifiable risk of an erroneous decision." (internal quotation marks and citation omitted)). Our approach also forecloses the State's assertion in Cooley's case that a probationer must show "particularized prejudice" to establish a due process violation. We are aware of no procedural due process cases requiring such a high standard of prejudice, and the State has not pointed us to any. The State instead cites a speedy trial case, the only context in which we generally require a showing of particularized prejudice, without offering any argument in favor of why the requirement should be extended here. *See State v. Montoya*, 2011-NMCA-074, ¶ 11, 150 N.M. 415, 259 P.3d 820.

{49}     We similarly reject Defendants' contention that we should presume prejudice in the event that a timely duration review hearing is not held. Defendants have provided no authority expressly permitting such a presumption or provided any principled reason for creating a presumption of prejudice in all such cases.

35

## C.     The State's Interest

{50}     Lastly, we examine the State's interest under the third *Mathews* factor. This factor is "a consideration of 'the public interest' which includes 'the administrative burden and other societal costs' associated with providing the proposed additional procedural safeguards." *Garduño*, 2016-NMSC-002, ¶ 38 (quoting *Mathews*, 424 U.S. at 347). Cooley and Antonio argue that "there is no legitimate governmental interest served by failing to hold a timely duration review hearing." However, the state certainly has an interest in rehabilitating convicted sex offenders through probation and keeping the community safe. *See State v. Baca*, 2004-NMCA-049, ¶ 36, 135 N.M. 490, 90 P.3d 509.

{51}     We therefore move on to consider whether the additional proceedings laid out above would burden the State and to what extent. Section 31-20-5.2(B) already mandates duration review hearings, and requires the district court to consider any relevant factor to determine whether probation must continue. *See Chavez*, 2019-NMCA-068, ¶ 16. Holding a duration review hearing where the district court specifically considers factors caused by any delay poses no additional significant financial or administrative burdens on the state and reflects a balance the Legislature has already adopted to serve both probationers and the public.

## IV. The *Mathews* Balance and Remand

**{52}** Defendants have a significant liberty interest in release from probation unless the State meets its burden of proving at a duration review hearing, to a reasonable certainty, that their probation should continue. The late duration review hearing they both were given increased the likelihood that interest was erroneously deprived by taking into consideration evidence that would have been unavailable at a timely hearing and failing to account for the delay in providing the late hearing and its cause. Although the state has an interest in keeping probationers on probation, a hearing which permits the district court to consider the likelihood of release but for the delay does not impose any additional financial or administrative burdens. Accordingly, each of the *Mathews* factors weighs in favor of concluding that Defendants were continued on probation without being afforded procedural due process.

**{53}** "[R]emedies for constitutional violations should be narrowly tailored." *Lopez v. Lemaster*, 2003-NMSC-003, ¶ 21, 133 N.M. 59, 61 P.3d 185. As we have recognized, the Legislature, although creating a liberty interest in release beginning at five years, conditioned that release on the state failing to meet its burden at a review hearing. The additional safeguards that require a district court to consider circumstances such as the delay, cause, and missed opportunity when determining whether probation should continue would adequately protect that interest, even if the

duration review hearing is late. Thus, a new hearing in which the district courts consider those factors would remedy the due process violation in both Defendants' cases. We accordingly reverse and remand for a new duration review hearing for both Defendants. In those hearings the district court should consider the impact of the delayed hearing. We also take this opportunity to remind district courts that duration review hearings are required when a probationer completes five years of probation and periodically afterward. Because the state has the burden of proving probation must *continue,* district courts should not take delays in holding the state to its burden lightly. Late duration review hearings create significant risk that a probationer will be continued on probation erroneously. The procedures we have laid out in this opinion may be sufficient to address that risk in the cases before us, but district courts should be mindful that there may be other factors to consider to ensure a probationer receives due process on a case-by-case basis.[4]

**CONCLUSION**

{54} Section 31-20-5.2 is not void for vagueness and requires a district court to hold duration review hearings by the deadlines in the statute. The district courts in these cases failed to do so, and their attempts to hold late duration review hearings

---

[4] For instance, as the special concurrence notes, this opinion would not foreclose remedies such as excluding evidence of probation violations to account for the missed opportunity suffered by a probationer as a result of a late duration review hearing.

deprived Defendants of their rights to procedural due process. We accordingly reverse and remand for further proceedings consistent with this opinion.

{55}     **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**KATHERINE A. WRAY, Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**, **retired,**
**Sitting by designation (specially concurring)**

**BUSTAMANTE, Judge, retired, sitting by designation (specially concurring).**

{56}     I concur in the analysis and the conclusion reached in the majority that Defendants experienced due process violations. I write separately to provide another perspective regarding the hearing we require on remand.

{57}     I start by noting that the State bears the burden of proof at the duration review hearings. *See* § 31-20-5.2(B) ("[A]t each review hearing *the state shall bear the burden* of proving to a reasonable certainty that the sex offender should remain on probation." (emphasis added)). A probationer's liberty interest includes not just the right to a timely duration review hearing, *see maj. op.* ¶ 35, but also the reasonable expectation that probation will be terminated if the State does not meet its burden of proof. Section 31-20-5.2(B). The risk posed by a late duration review hearing is not just that there might be no evidence of probation violations had the hearing been held on time, *maj. op.* ¶ 39, but that the State might not have had the evidence to meet its burden at a timely duration review hearing. *See* § 31-20-5.2(B). As the majority notes, the risk of erroneously continuing probation increases the time a probationer must abide by the terms and conditions of their probation, and permits the State to impose strict probation requirements that may no longer be warranted. *Maj. op.* ¶¶ 44, 45. In effect, an untimely hearing allows the State to enforce requirements that the State has not met its burden to impose.

{58}    Having recognized a liberty interest and a due process violation using the *Mathews* test, the majority's remedy is to remand and have the district court conduct what is in essence yet another *Mathews* test. *Maj. op.* ¶¶ 44, 45. Apart from suggesting that the district courts consider the matters already discussed in the majority, this Court gives them no other direction. *Maj. op.* ¶¶ 44, 45. I am concerned that the district courts will be hard pressed to fashion a solution absent at least a baseline for the process. In an effort to provide more concrete guidance to the district courts with regard to the process required at late duration review hearings, I offer the following suggestions.

{59}    I recommend two starting points. First, I would make clear that it is the State's responsibility to initiate the duration review hearing process. It is reasonable to put that burden on the State given that it is the entity that has the closest contact with probationers and has the primary institutional responsibility to follow probationers' compliance with and progress under their probationary program. The duty to seek a timely setting for duration review hearings also follows naturally from the fact that the State bears the burden of proof at the hearing. *See* § 31-20-5.2(B). Placing the responsibility on the State to commence the duration review hearing process is the most efficient way to help ensure that the district courts can fully exercise their statutory responsibility to conduct the hearings required by the statute in a timely manner.

41

{60}     Second, I would explicitly allow the district courts—in appropriate circumstances—to exclude evidence supporting denial of release from probation if that evidence would not have been available had a reasonably timely hearing been held. Exclusion of evidence would give explicit voice to the "missed opportunity" factor suggested in the majority as a consideration at the hearing. *See maj. op.* ¶ 46. I understand that exclusion would be a steep penalty for the State. Thus, I do not suggest that exclusion should be automatic, but it should be a presumptive option. The potential for loss of evidence would provide an important incentive to the State to ensure that it took seriously its responsibility to get duration review hearings set on a reasonably timely basis.

{61}     Given that the State has the responsibility to "get the ball rolling" in this context, my suggestions are intended to focus the district courts' attention on the State's actions, first as it reviews the delay and missed opportunity factors suggested in the majority. The exclusionary rule I suggest would provide a familiar and powerful tool to the district courts as they design late duration review hearings.

_____
**MICHAEL D. BUSTAMANTE, Judge**,
**retired, Sitting by designation**